## Oscar Talcott v. John .Q. Crippen.

*Mortgagee's good faith—apparent ownership—Damages.*

1. If a bill of sale of a shingle-mill is taken as security for its owner's debts but the mill is left in his possession a copy of the bill must be filed at once or the property cannot be protected by it against other creditors of the owner (How. St. § 6193) whose good faith alone will not protect the unrecorded transfer.

2. Where replevin against an officer who had taken the property under an attachment was brought by a person to whom a bill of sale had been given as security but not put on file, it was *held* proper for defendant to show that part of the debts on which the attachment issued accrued after the bill was given and in reliance upon the vendor's continued possession and apparent ownership.

3 Where malice is in no way an element in a litigation over the right to personal property the rule of damages, is the same whether the action is of contract or of tort.

4. Evidence as to prospective profits is inadmissible to fix the measure of damages in a case where the loss of such profits is involved if it appears that they could not be made except under the most favorable circumstances, that the chances against them were numerous and that it was doubtful if the business was profitable at all as conducted.

Error to Montcalm.   (V. H. Smith, J.)   Feb. 1.—Feb. 8.

Replevin.   Defendant brings error.   Reversed.

*T. F. Shields* and *Webster, Steere & Miller* for appellant.

*Lemuel Clute* for appellee.

Cooley, C. J.   Plaintiff replevied of defendant a shingle-mill.   On the trial plaintiff deduced title under a bill of sale from Spaulding S. Ackles, bearing date April 6, 1882, and purporting to make an absolute transfer of the title. Ackles at the time was in possession and was operating the mill.   He was indebted to the plaintiff, according to his testimony, in a considerable amount, and, as he testifies for

| 52 | 633 |
|----|-----|
| 60 | 362 |
| 52 | 633 |
| 67 | 29 |
| 67 | 458 |
| 52 | 633 |
| 86 | 655 |
| 52 | 633 |
| o106 | 544 |
| 106 | 550 |
| 52 | 633 |
| 110 | 7 |
| 52 | 633 |
| 116 | 146 |
| 52 | 633 |
| 127 | 478 |

the plaintiff, he transferred the mill to the plaintiff as
security for the debt.   In immediate connection with this
he says he considered it a genuine sale.    Plaintiff on his
own behalf testified that Ackles, after the bill of sale was
given, was left to operate the mill till he had performed an
outstanding contract, and whatever profits would accrue
from it he was to pay to plaintiff on his indebtedness.
Plaintiff himself took possession about July 1, 1882.   The
bill of sale was filed in the office of the township clerk,
August 10, 1882.    Plaintiff says that he filed it because, in
a casual conversation with a lawyer, he was advised that it
would be safer to do so.   The defendant is sheriff of the
county and he seized the mill on attachments against
Ackles on August 11, 1882.    The demands for which the
attachments issued were created between February 9, 1882,
and August 3, 1882.

In submitting the case to the jury the circuit judge failed
to bring out the distinction between transfers of chattels by
absolute sale and those by way of security, and he charged
the jury at the plaintiff's request, that if they found he
took the mill from Ackles for the purpose of paying him
for money that Ackles owed him, and to indemnify him for
liabilities which he agreed to pay for Ackles, and without
any intent to hinder, delay or defraud the creditors of
Ackles, their verdict should be for the plaintiff. This could
only be true if the sale was absolute; for the statute provides
that "every mortgage, or conveyance intended to operate
as a mortgage, of goods and chattels, which shall hereafter
be made, which shall not be accompanied by an immediate
delivery, and followed by an actual and continued change
of possession of the things mortgaged, shall be absolutely
void as against the creditors of the mortgagor, and as against
subsequent purchasers or mortgagees in good faith, unless
the mortgage, or a true copy thereof" shall be duly filed.
How. St. § 6193.   Good faith in the mortgagee does not
protect the unrecorded transfer which comes under this
statute.   *Haynes v. Leppig* 40 Mich. 607 ; *Fearey v. Cum-
mings* 41 Mich. 383 ; *Cooper v. Brock* 41 Mich. 491 ; *Sut-*

*ton v. Rowley* 44 Mich. 113; *Anderson v. Brenneman* 44 Mich. 198; *Wallen v. Rossman* 45 Mich. 333. There was abundant if not conclusive evidence to go to the jury on the theory that this bill of sale was nothing but a mortgage, and this seems to have been the theory of the plaintiff himself when he began his proofs.

The defense offered evidence to show that a portion of the demands for which the attachments were sued out was contracted after the giving of the bill of sale, and in reliance upon the possession and apparent ownership of Ackles. This was not received, but we think it should have been. The use of any such credit as the apparent ownership of Ackles would give him, ought to have been anticipated by the plaintiff as a possible occurrence, and it might well be argued to the jury that plaintiff should have given some degree of notoriety to the transfer. The fact that persons continued to trust Ackles without knowledge of any transfer, when they would have refused if they had known of it, is a circumstance bearing strongly upon the plaintiff's good faith.

The plaintiff delayed the replevy of the mill for three months, and he claimed on the trial to recover as damages the profits he might have made in the interval. The defense objected to the proofs offered, and referred to the decisions in *Allis v. McLean* 48 Mich. 428 and *McKinnon v. McEwan* 48 Mich. 106, as authority against them. These cases are said not to be applicable, because they were suits upon contract, while the present is a suit sounding in tort. A distinction is undoubtedly to be taken between actions upon contract and actions of tort, in all cases where malice, express or implied, is an element; but where parties are in good faith litigating disputed rights, and there is a choice of remedies, the rule of damages ought not to depend upon the form of remedy the party has selected. This plaintiff elected to retake the property in an action sounding in tort; he might have waited until a sale and sued in assumpsit for the proceeds; but in either case the facts in controversy would have been the same, and the

measure of damages ought to be by the same rule. The real question is, by what rule shall we with most certainty arrive at a knowledge of what they actually were. It was shown in the two cases just referred to that estimates of profits are generally so unreliable as to be worthless as a means of ariving at the actual damages; and in *Allis v. McLean* it is said (p. 432) that " the profits of running a saw-mill are proverbially uncertain, indefinite and contingent. They depend on many circumstances, among which are capital, skill, supply of logs, supply and steadiness of labor ; and one man may fail while another prospers, and the same man may fail at one time and prosper at another, though the prospective outlook seems equally favorable at both times. Estimates of profits seldom take all contingencies into the ac-count, and are therefore seldom realized ; and if damages for breach of contract were to be determined on estimates of probable profits, no man could know in advance the ex-tent of his responsibility. It is therefore very properly held in cases like the present that the party complaining of a breach of contract must point out elements of damage more certain and more directly traceable to the injury than prospective profits can be."

It was said, however, that this language is not applicable to the present case, because Ackles when he sold to the plaintiff had an unfulfilled contract for cutting shingles, upon which it was possible to estimate the profits with reasonable certainty. This contract was transferred to the plaintiff, [and] he was allowed to show, by the testimony of Ackles and others, that the profits in filling it would be ten dollars a day. He was also permitted to give similar testimony without regard to that contract. We have looked through the evidence, and are of opinion that no better case could be taken for an illustration of the worth-lessness of this standard for the estimation of damages. It conclusively appears from it that the estimated profits could only be made under the most favorable circumstances; that the contingencies which stopped operations or rendered them unprofitable were numerous ; and finally that it was

very doubtful whether the business in the hands of Ackles had been profitable at all.   And it is a significant [fact] that the plaintiff, after delaying so long to retake the property, had not in the following May, when the suit was tried, got it into operation again.   He had then, as he says, arranged with a party to put it in condition for use and pay five dollars a day for the use of it, but with allowance of lost time for stoppages, which appear when Ackles run it, to have been frequent.

We think the estimates of profits were not proper evidence.

The judgment must be reversed and a new trial ordered.

The other Justices concurred.