## SARGENT ET AL. *v.* ROBERTSON.

[No. 2,143.    Filed April 20, 1897.]

CONTRACT.—*Consideration.*—A promise to do what the promisor is under a previous valid, legal obligation to do, is insufficient as a consideration for an agreement of which it constitutes a part.    *p. 421.*

SAME.—*Executory.*—*May be Abandoned by Agreement of all the Parties.*—A contract which is wholly executory may be abandoned by the agreement of all the parties, the renunciation of each party of his

rights under the contract being a sufficient consideration for his release from obligation by the other parties. *pp. 421, 422.*

LANDLORD AND TENANT.—*Oral Modification of Lease.—Consideration.*—An oral modification of a lease of certain real estate for coal mining purposes, providing for the payment of a smaller royalty, the lessor agreeing to the change in order to induce the lessee to remain in possession and operate the mine, is supported by a sufficient consideration where it is shown that the lease, as modified, was acted upon and carried out to the acceptance of all concerned for many years. *pp. 421–428.*

From the Warrick Circuit Court. *Affirmed.*

*W. Reister, I. Taylor, W. Taylor* and *L. Taylor,* for appellants.

*S. B. Hatfield, J. A. Hemenway, F. H. Hatfield* and *A. J. Rutledge,* for appellee.

BLACK, J.—The complaint of the appellants against the appellee contained two paragraphs. In both, it was shown that on the 12th of January, 1881, one O. P. Sargent being the owner in fee simple of certain lands in Warrick county, he and the appellee executed a written agreement, which was made an exhibit, whereby said Sargent demised and let said lands to the appellee for the sole purpose of mining and removing therefrom the coal lying below the surface, in consideration whereof, the appellee covenanted and agreed to enter upon said lands, sink a shaft to the bed of the coal, and have the same completed and ready for operation within twelve months from the date of the lease, and from thence to dig and mine the coal, and to pay said Sargent for all salable coal at the rate of forty cents per hundred bushels of eighty pounds per bushel; payment to be made monthly. It was provided that if the appellee failed to comply with the above stipulations, the lease should be null and void. By the terms of the lease the appellee reserved the right to all slack coal for

fuel for the engine, and said Sargent reserved the right, at all reasonable hours, to inspect the appellee's mining book, and the right to enter and survey the mine. The appellee further reserved the right to remove all buildings, fixtures and machinery from said lands whenever the same were worked out. It was also stipulated that, "if the works shall be shut down for ninety days," the lease should be null and void.

It was alleged in both paragraphs that in April, 1886, said lessor died intestate, seized of the reversion of said premises; and the appellants were shown to be heirs of the lessor, and also purchasers from his other heirs.

In the first paragraph it was alleged that the lessor and all the parties seized of the reversion performed all the conditions on their part; that the appellee, from the 31st of November, 1886, to March 31st, 1895, mined a specified number of bushels of salable coal; that during that period he paid a certain sum, leaving a balance designated due and unpaid, as shown by a bill of particulars filed with the complaint.

In the second paragraph it was alleged that the appellee, upon the execution of the lease, entered said premises under it and failed to pay the installment of rent coming due on the 11th day of May, 1895. A formal demand, before sunset, and a refusal were averred; and it was alleged that the rent still remained due and unpaid; and that the appellee unlawfully held over, etc.

The complaint demanded judgment for possession and damages, and also for the balance of rent unpaid.

Issues were formed and tried, and the appellants here assign as errors the overruling of their demurrers to the third and fourth paragraphs of the appellee's answer.

We do not find in the record any demurrer to the fourth paragraph of answer. In the third paragraph it was alleged, in substance, that after the execution of the lease, and during the lifetime of the lessor, he was informed by the appellee that he could not pay the price or royalty provided for in the lease, and would have to forfeit the same by shutting down the mine for a period of ninety days, and thereby rendering the lease void; that he could not compete with other men engaged in mining coal in and about the place where the mine was situated, and pay forty cents per hundred bushels of eighty pounds per bushel, because of the extra difficulty in mining and excavating coal under said land; that unless he could get said coal for less royalty, he would be forced to shut down said mine for ninety days and make void said lease, and then remove his buildings, shaft and fixtures; when it was then agreed by and between the appellee and said O. P. Sargent, in order to prevent a forfeiture of said lease, and keep said mine running, and to secure to said Sargent a royalty from said mine, and allow appellee to mine said coal, that the rent or royalty should be changed from forty cents to twenty-cents per hundred bushels at eighty pounds per bushel; that pursuant to said agreement said O. P. Sargent accepted from appellee twenty-five cents per hundred bushels royalty for all coal mined under said lease, and appellee paid the same in full; that long after the death of said O. P. Sargent, the administrator of his estate, in a proceeding in the court below, by order of the court, made a full settlement with appellee, and appellee paid him twenty-five cents per hundred bushels in full satisfaction of all said claim for royalty; that under said new contract said mine was operated under said lease at said reduced rate up to the time of the filing of the complaint herein, and

said royalty of twenty-five cents per hundred bushels was fully paid to the heirs of said O. P. Sargent, the appellants, at said rate, up to the time of bringing this suit, which appellants accepted in full settlement of their said claim.

It is contended by the appellants that the new contract upon which the appellee based his defense in the third paragraph of answer was an agreement without consideration, and that, therefore, this answer was insufficient.

It is a familiar rule, that a promise to do what the promisor is under a previous valid, legal obligation to do, is sufficient as a consideration for an agreement of which it constitutes a part. *Ford* v. *Garner,* 15 Ind. 298; *Reynolds* v. *Nugent,* 25 Ind. 328; *Smith* v. *Tyler,* 51 Ind. 512.

A contract which is wholly executory may be discharged and abandoned by the agreement of all the parties; the renunciation by each party of his rights under the contract being a sufficient consideration for his release from obligation by the other parties.

It is, in effect, contended on behalf of the appellants that, while this is true, yet when the contract has been acted upon, and in part performed, the obligations of the parties cannot be discharged by agreement without a new consideration, and that in the case before us a sufficient consideration for the new arrangement does not appear.

It is not expressly stated in the third paragraph of answer that the new agreement was made after work had been commenced under the written agreement, but the pleading is treated by counsel as proceeding upon such theory; and it contains averments consistent therewith, and is subject to such construction upon demurrer.

By the terms of the new arrangement no change

was made whereby Sargent was to do or give anything other than was required of him under the written lease; and the only change made was that the appellee should pay twenty-five cents instead of forty cents per hundred bushels of coal of eighty pounds per bushel.

Did the facts shown in the answer furnish sufficient consideration for the new agreement?

In *Monroc* v. *Perkins,* 9 Pick. (Mass.) 298, 20 Am. Dec. 475, the plaintiff had been employed by the defendants by contract under seal for the erection of a hotel, for a certain sum. The action was *indebitatus assumpsit* for work done, materials furnished, etc. The defense was that the work was done and the materials were furnished on the special contract under seal, which was produced in evidence. The plaintiff was permitted to introduce evidence that, after he had partly finished the work, he expressed regrets at having undertaken it, and was assured by the defendants that he should not suffer, and that the work was carried on and finished upon their engagement and promise that he should have reasonable compensation, without regard to the special contract. It was held that this parol evidence was admissible to show waiver of the sealed contract. It being contended that the parol promise was without consideration, the court said: "This depends entirely on the question whether the first contract was waived. The plaintiff having refused to perform that contract, as he might do, subjecting himself to such damages as the other parties might show they were entitled to recover, he afterward went on upon the faith of the new promise and finished the work. This was a sufficient consideration. If Payne and Perkins were willing to accept his relinquishment of the old contract and proceed on

a new agreement, the law, we think, would not prevent it."

In *Lattimore* v. *Harsen*, 14 Johns. 330, the plaintiffs had entered into an agreement with the defendant, under seal, to perform certain work for a stipulated sum, under a penalty. After some part of the work was done, the plaintiffs became dissatisfied with the agreement and determined to abandon the work, when the defendant agreed that if the plaintiffs would go on and complete the work he would pay them by the day for their labor and materials found, without reference to the written contract. It was held that if the plaintiffs chose to incur the penalty for nonfulfillment of the special contract, they had a right to do so, and notice of such intention having been given to the defendant, upon which he entered into the new agreement, there was a sufficient consideration for his promise, and the plaintiff might recover under the substituted agreement.

In *Bishop* v. *Busse*, 69 Ill. 403, there was a contract, not under seal, for the building of a house by the plaintiffs for the defendant, at certain prices specified. After the work had been commenced, the plaintiffs informed the defendant that they could not and would not go on under the contract, and must abandon it; when the defendant told the plaintiffs to go on and finish the job, and he would pay them what was right for it. It was held that the new contract had a sufficient consideration. The court said, that upon the failure of the plaintiffs to perform the contract the defendant could have recovered damages occasioned by the breach; but that he may have considered this of less advantage to him than the completion of the building, and if so, that of itself would have been a sufficient consideration to support the new agreement.

In *Raymond* v. *Krauskopf*, 87 Ia. 602, 54 N. W. 432, the plaintiff, in April, leased to the defendant a farm of forty acres for a year; the lease being in writing and requiring the defendant to deliver in November, sixteen bushels of corn per acre. In June, storms injured the growing corn, and the defendant informed the plaintiff that there would not be enough corn raised to pay the rent, and that he would not farm the land unless a new arrangement were made; and he proposed to surrender the land and obtain employment by the month; whereupon the plaintiff told the defendant to farm the land, and the plaintiff would accept one-half of the corn raised in full of all demands for the rent. The defendant then replanted the corn, farmed the land during the season, and delivered to plaintiff 200 bushels of corn, retaining only 150 bushels himself. The action was to recover the value of the 480 bushels of corn required to make up the quantity provided for in the written lease. It was held that there was a sufficient consideration to support the second agreement.

*Ten Eyck* v. *Sleeper* (Minn.), 67 N. W. 1026, was an action upon a written lease of a hotel, to recover rent as stipulated in the lease, which by its terms ran for ten years from 1890, at a monthly rental of $500.00, the lessee to keep the premises in repair. The lessee took possession under the lease. In 1893, the tenant complained to the landlord of the depression in business, and declared that he was unable to pay the rent as agreed; and soon thereafter, being insolvent and unable to pay rent as agreed, he refused to pay further rental, and refused to continue to occupy the premises under the lease, and notified the landlord that he would pay no more rent under or according to its terms and would vacate the premises. Thereupon, the parties executed an agreement, writ-

ten on the back of the lease, whereby it was agreed that the rent should be reduced to $350.00 per month until 1897, and that the landlord should make certain repairs. The tenant continued to occupy the premises as before, and paid rent under the modified lease, for which receipts in full were given, for sixteen months, when he became insolvent and unable to carry on the hotel. It was held that the modification rested on a sufficient consideration. See, also, *Cooke* v. *Murphy*, 70 Ill. 96; *Jaffray & Co.* v. *Greenbaum*, 64 Ia. 492, 20 N. W. 775; *Stewart* v. *Keteltas*, 36 N. Y. 388; *Conkling* v. *Tuttle*, 52 Mich. 630, 18 N. W. 392; *Holmes* v. *Doane*, 9 Cush. 135; *Rollins* v. *Marsh*, 128 Mass. 116.

The doctrine of these cases has been applied in this State. In *Mills* v. *Riley*, 7 Ind. 137, a special contract for work and labor had been in part performed, when it was abandoned by mutual consent of the parties, and work in continuation of that already done under the contract was afterward performed, under a new arrangement. It was held that the original contract did not govern in limiting the price and designating the article in which payment was to be made.

In *Coyner* v. *Lynde*, 10 Ind. 282, it was held, that when a contract for work is abandoned by one of the parties, the other party has his election whether to sue for nonperformance, or to obtain the completion of the work by a new arrangement; and that if in making such new arrangement or agreement, new or additional promises be made by him to the other party dependent upon the completion of the work, and the latter, in consideration of such new promises, completes the work, such new promises should be held binding.

In that case the plaintiff was a contractor for the construction of a portion of a railroad. The defend-

ants agreed with the plaintiff to complete a portion of the latter's contract, for which the defendants were to receive from the railroad company the same rates that the plaintiff was to receive, and the defendants were to pay the plaintiff a certain portion of the sum so received. The suit was to recover that sum. An answer was held sufficient which alleged that after the parties had entered into the agreement sued on, it was ascertained that the prices at which the plaintiff had undertaken with the company to do the work were greatly inadequate; that it would be a losing business to prosecute the work; that upon such discovery, the defendants determined to abandon the contract and to leave the plaintiff to perform it; that he, knowing he would suffer loss to complete it himself at the prices, in view of such facts, and to induce the defendants to go on with the work and not throw it on his hands, agreed that if the defendants would continue the work to completion, and procure additional pay from the company, which, with the amount agreed to be paid to the plaintiff, would enable them to complete the work and save him from prosecuting it, the plaintiff would release the defendants from said payment; and that relying on this promise and an agreement of the company to pay them an additional compensation, they completed the work.

In the written contract involved in the case at bar, the provision relating to the shutting down of the works for ninety days is to be regarded as having been inserted for the benefit of the landowner, Sargent, and it did not rest with the appellee alone to terminate all obligation on his part under the contract by so ceasing, without the consent of the other party, the work which, by other portions of the instrument, he was required to prosecute.

It was not provided in the contract that it should

be optional with the appellee to cease operations and remove the buildings, fixtures and machinery at any time when he might be pleased to do so before the land should be worked out. And yet it was within the power of the appellee by actually ceasing operations, to cause the mine to lie unworked, to compel the landowner to work himself, or to drive him to seek a contract with some third person.

When the appellee informed O. P. Sargent of the inability of the former to perform the contract at the price per hundred bushels of coal therein agreed upon, and stated his reasons therefore, and told said Sargent that the appellee would be forced to shut down the mine, as alleged in the answer, said Sargent thus had presented to him a choice between reliance upon his right to treat the contract as renounced by the appellee, so far as future mining was concerned, and to pursue the recovery of such damages as he may have supposed would be awarded in an action for breach of the contract, on the one hand, and, on the other hand, his acceptance of the alternative proposed by the appellee. He may have regarded the amount recoverable at law as uncertain, and the prospect of actual benefit through resort to legal proceedings as doubtful or hopeless, and he may have considered the arrangement proposed as more beneficial than any other that he could make for the working of the mine. He appears to have chosen to make the new arrangement, whereby he secured the continuance of mining operations by the appellee.

Whatever the true technical character of the contractual relations of the parties, we are here dealing with a particular dispute as to their rights arising from their acts under those relations.

Upon the proof of the facts alleged in the answer, they might be regarded as sufficient to sustain a con-

clusion that the old contract was rescinded by mutual agreement, and, it having been thus abandoned, that the modified contract was substituted in its place.

The new arrangement did not end with the making of the oral modification, but the new arrangement was acted upon and carried out to the acceptance of all concerned for many years, and up to the institution of this action. In the decided cases much stress is properly laid upon such carrying into effect of the new contract by the subsequent conduct of the parties.

It would seem that it would be a reproach to the law if any of its rules were so inflexible that in their application the courts could not find a way to refuse to lend their aid to such an inequitable demand as that of the appellants is shown to be by the answer under review.

The judgment is affirmed.