## WENDLING v. SNYDER ET AL.

[No. 4,061. Filed January 15, 1903.]

CONTRACT.—*To Drill Well.*—*Modification.*—Plaintiffs contracted with defendant to drill a water-well at a stipulated price per foot, no depth being agreed upon. Water was found at a depth of eighty feet, but not in sufficient quantity, and by agreement the drilling was continued. Further on in the drilling a pocket of oil was struck, which made the water offensive, and defendant stated that it would be a pretty expensive well; whereupon plaintiffs told him that they would reduce the price. Plaintiffs expressed the opinion that the water would improve after being pumped a few months, and later said they would plug the well about ninety feet down, and shut off the lower water; but this was never done. *Held,* that there had been no modification of the contract.

From Cass Circuit Court; *D. H. Chase,* Judge.

Action by Daniel K. Snyder and another against Michael Wendling. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

Wendling *v.* Snyder.

*J. H. Neff* and *G. W. Funk*, for appellant.

*D. D. Fickle, S. T. McConnell, A. G. Jenkines* and *B. C. Jenkines,* for appellees.

BLACK, P. J.—The appellee Snyder and his partner, since deceased, and represented here by his administratrix, sued the appellant to recover the agreed price of $1.20 per foot for the drilling of a well by the plaintiffs to the depth of 273 feet. Issues were formed, which were tried by jury, and it is assigned here that the court erred in overruling the appellant's motion for a new trial.

The evidence authorized the conclusion that the parties agreed upon the price of $1.20 per foot, and that the plaintiffs continued to drill to the depth of 273 feet pursuant to agreement between them and the appellant as the work progressed. There may be said to be some conflict in the evidence as to whether there was any agreement as to the quality of the water to be obtained, but the jury found specially against the appellant on that matter, and we can not under the evidence interfere with that conclusion. In the progress of drilling, a pocket of oil or stratum of oily substance was reached; and as the work continued, and after it was finished, the water obtained from the well was oily and consequently offensive. After the water had thus become bad, the appellant, in conversation concerning it with the appellee Snyder, told him that it would be a pretty expensive well, whereupon the appellee Snyder said he would drill it for less, but nothing was said as to any amount of reduction of the price. When the drilling was finished, in a conversation between the appellant and the appellee Snyder, the latter, after some figuring, said he would charge the appellant "about near $267." During the progress of the drilling, and after its completion, the appellant paid the plaintiffs in part for the work. The water continued to be bad, and the appellee Snyder expressed to the appellant the opinion that the water would improve if used; that after

it was pumped and used for a few months it might be all right, and the smell would leave the water. Later the plaintiffs told the appellant that they would plug the well off about ninety feet, and shut off the lower water, to which the appellant agreed, but the plaintiffs did not do so. The court, in orally instructing the jury, said: "I think I may say to you that there has been no evidence of any new contract, or other contract than the one that was made somewhere near the house of Mr. Snyder;" thereby referring to the original contract.

The indefinite expressions stated above did not constitute an additional contract, or have the effect of modifying the original contract. The promises, opinions, conjectures, and assurances of the plaintiffs, or either of them, thus expressed, were not based upon any new or additional consideration, and there was, therefore, wholly lacking an essential element of contract. What was said by the appellee Snyder in relation to the improvement of the quality of the water, which the plaintiffs had not guaranteed, amounted to no more than the statement of an opinion or the expression of a hope. Of course, the promises made after the completion of the work, and after the cause of action therefor had accrued, being without consideration, could not affect the right to recover. They could not be available as a defense, or by way of reduction of the contract price.

It does not appear that while the work was in progress appellant refused to go on with the work in endeavoring to get good water in sufficient quantity, or that he determined to abandon the undertaking and notified the plaintiffs of such determination, or that the appellant at any time proposed to cease operations, and that because of such refusal, or notification, or proposal the plaintiffs proposed or agreed with the appellant to continue the work without reference to the price fixed by the original contract, and to do the work of drilling the well or any part of the work for a definite remuneration different from that originally agreed

upon, or for a reasonable compensation, and that the well was thereupon completed pursuant to such new contract.

The original contract was for the drilling of a well at a specified price per foot, there being no stipulation as to the number of feet to be drilled. Water was reached at a depth of seventy-five or eighty feet, but the flow was not regarded as sufficiently copious, and by agreement the work was continued. The appellant had the right to cause operations to cease, but he did not do so, or undertake to do so. Unfortunately, a stratum of oily substance was reached, and the endeavor to make a good well consequently was not successful. It appears to have been the continuous purpose of the appellant, under encouragement from the appellee Snyder, to have the drilling proceed, though the evidence showed expressions of his disappointment at the result of what he was himself causing or permitting to be done. It does not appear that the statement of Snyder that he would charge less caused the appellant to abandon any determination to cease operations, or that it was because of this statement that the drilling was extended to a greater depth. The statement was made in response to the appellant's suggestion that it would be a pretty expensive well. This indicated, not a purpose to cease operations, but rather an intention to go on, and regret at the greatness of the cost. The promise of Snyder was indefinite. It can not be said to have amounted to a promise to do the work for a reasonable compensation, and it furnished no measure of reduction of the original price, and there does not appear to have been anything which can properly be regarded as a new consideration. If it could be said that the promise of Snyder bound the plaintiffs for a nominal amount, the law would not concern itself to enforce such promise. The evidence did not tend to prove an abandonment or a modification of the original contract, and to show that the work of drilling the well was continued and completed in pursuance of a new or modified contract. See

*Sargent* v. *Robinson,* 17 Ind. App. 411, and cases cited. Therefore the court did not err in the portion of its oral instruction above quoted.

The appellant insists that the court erred in refusing to give to the jury certain instructions, the fifth and sixth, tendered by the appellant. The fifth instruction so refused was to the effect that if the appellee Snyder consented or agreed to construct any part of the well at his own risk, the plaintiffs could not recover for all work done at their risk. The sixth instruction rejected was to the effect that if the jury should find from the evidence that the plaintiffs commenced the construction of a well for the appellant under a contract at an agreed price of $1.20 per foot, and in the progress of the work the plaintiffs consented to take a less sum, or to wait and see the results of the work in order to find out what it was worth, and no actual agreement was entered into as to the price, then the plaintiffs could not recover upon the contract sued upon.

There was evidence, consisting of testimony of the appellant's wife, that during the progress of the work the appellee Snyder said to her that he intended to drill at his own risk; and there was testimony of a woman residing in the same neighborhood that, when the appellee Snyder was drilling the well, she heard him say that he would drill on now and not charge the Wendlings anything. The appellant was a witness, and no testimony of his has been pointed out to the effect that there was an agreement between him and the plaintiffs that they should drill at their own risk. In these instructions there was no reference to a consideration, without which the consent or agreement mentioned in either instruction could not be of any avail to the appellant.

Judgment affirmed.