TRUMAN *v.* J. I. CASE THRESHING MACHINE CO.

1. Damages—Profits—Speculative Receipts.
> Anticipated profits of an itinerant thresherman were not recoverable from a mortgagee who wrongfully took possession of the threshing machine, upon evidence offered by plaintiff which was indefinite and showed that the profits were uncertain, dependent on the weather, and on matters beyond plaintiff's control.

2. Same—Principal and Agent—Parol Evidence Rule.
> Testimony that defendant's agent told plaintiff at the time the machine was purchased that he, could make $700 or more profit before the first payment became due, was inadmissible to add to the terms of the written contract which contained no such warranty.

3. Same—Fraud.
> The agent's statement amounted to no more than "puffing" used generally by salesmen.

4. CHATTEL MORTGAGES — POSSESSION BY MORTGAGOR — INSECUR-
ITY CLAUSE—GOOD FAITH.

> Instructions to the jury that defendant must satisfy them by
> a fair preponderance of the evidence that it believed and had
> good reason to believe that its security was in danger of be-
> ing impaired, that there was ground for such belief and de-
> fendant acted in good faith in seizing the threshing machine,
> were prejudicial error, being in conflict with a prior state-
> ment of the correct rule that if defendant acted in good faith
> plaintiff could not recover, though the reasons on which it
> acted were insufficient.

Error to Hillsdale; Chester, J. Submitted January
26, 1912. (Docket No. 37.) Decided March 12, 1912.

Trover by Orrin B. Truman against the J. I. Case
Threshing Machine Company for the conversion of a
threshing machine. Judgment for plaintiff. Defendant
brings error. Reversed.

*Lockerby & Bowen*, for appellant.

*Miles T. Davis* and *Fellows & Chandler*, for ap-
pellee.

Plaintiff sues in an action of trover for the value of a
threshing machine taken by defendant under the so-called
insecurity clause of a chattel mortgage. He also seeks to
recover special damages caused by said taking. The
machine was sold in 1908 for $2,200, the defendant taking
four promissory notes for the amount, the first of which
fell due in September, 1909, and one each year thereafter.
To secure the payment of these notes plaintiff gave to
defendant a chattel mortgage upon the machine. This
mortgage contained the usual recital that:

"If said party of the second part shall at any time deem
itself insecure, then, thereon, and thereafter it shall be law-
ful, and the said first party authorizes the second party, its
successors and assigns, or its authorized agent, to treat the
debt hereby secured as fully due and payable, and to take
said property wherever the same may be found, and hold
or sell and dispose of the same and all equity of redemp-

tion, at public auction or private sale, with or without notice, and on such terms as said party of the second part or its agents may see fit," etc.

During the summer of 1909, defendant claimed to have learned facts which led it to believe that plaintiff was engaged in litigation and that he intended to run the machine until the first note came due in September and then abandon it to defendant.

Acting on this information defendant seized the machine on August 24, 1909, and, after giving notice to plaintiff, sold it at public sale for the sum of $1,437, defendant itself becoming the purchaser at such sale.

Plaintiff brought this action the day after the seizure, and to the usual declaration in trover added a special count for damages growing out of loss of profits upon some 60 threshing contracts which he claimed to have had at the time of the seizure.

Defendant filed a plea of the general issue with notice that defendant was justified in the taking by virtue of the clause in the mortgage above quoted, and the acts of the plaintiff whereby the power of seizure under said clause became operative. Plaintiff had verdict for $228.28, that being the amount of his claim allowed by the jury in excess of the mortgage debt. Defendant has brought the case to this court for review.

BROOKE, J. (*after stating the facts*). While there are some 30 assignments of error, we will examine those only which properly arrange themselves under the following heads:

(1) That the court erred in admitting testimony, on behalf of plaintiff, relative to the profits which plaintiff might have made during the threshing season of 1909 had the machine not been taken from him. The objection to this line of testimony was that such prospective profits were uncertain, indefinite, speculative, and conjectural.

(2) That the court erred in admitting testimony relative to representations said to have been made by defendant's agent to plaintiff as to what he could earn with the

machine if he purchased it. This was objected to upon the ground that it was incompetent and immaterial, and, further, that the whole contract was in writing and must govern.

(3) That the court erred in refusing certain requests to charge, and in the charge as given.

Touching the first group of assignments, we find that plaintiff was permitted to testify that he had about 60 contracts for threshing in the fall of 1909. These contracts were not in writing. Plaintiff claimed to have contracts with many persons whom he had never seen. His claim as to those was that different ones came to him and asked him to do their threshing and while there thresh what might be in the neighborhood. On cross-examination he testified:

"I have given these names from a list which I have read from and which I made out a day or two ago. I went over the acreage last night. After court adjourned last night I prepared a list of the acreage which I have given here this morning. This list is an estimation of the acreage that they had when they contracted the jobs with me. I made an estimate of the acreage at the request of you fellows here yesterday. I have estimated some of the acreage these people had, and corresponded some of my jobs with other threshers that threshed the jobs afterwards. It is from what they told me, as near as I could remember, they had at the time, as near as I could remember, of what they told me when they contracted the job. I have got some of that statement off of other threshers' books that done jobs of mine after the taking away of my machine. I haven't any book accounts, nor never had, of the acres, so I must depend largely upon my memory. * * * I haven't attempted to divide and give the number of acres of oats and the number of acres of wheat. [Plaintiff had testified on direct examination that a fair profit for threshing oats was one and one-half cents per bushel, and for wheat two and one-half cents per bushel.]

"Q. Now, I ask you once more, have you any idea, and can you give us so as to form a good fair basis of the number of bushels of wheat, or the number of bushels of oats, that were grown and threshed upon the farms that you have named that year?

"*A.* I would have no way of knowing the number of bushels of grain, no. * * *

"*Q.* Yes; it isn't much more than guesswork, is it, Mr. Truman, as to what it would—

"*A.* Well, of course, it's partially in that way, a man in threshing, he knows what the run of acreage runs, and, of course, he figures upon that, but, of course, it would be partially guesswork; a man wouldn't know how much was in a job until it was done. * * * My profits would depend on whether I could run right along or whether I couldn't run right along. If I should break down, had bad weather, bad grain, and bad threshing there wouldn't be much profits. Those things occur in the threshing business and in all business, I guess. * * * I had never run a machine in that territory and didn't know what that territory—there is a difference in territories—I didn't know what a machine was able to make there; I never had any experience for myself in that particular territory."

We have quoted these excerpts from plaintiff's testimony in order to show its unsatisfactory and indefinite character as a basis upon which to award damages for loss of profits. We think this case falls clearly within the principle laid down in *Allis* v. *McLean*, 48 Mich. 428 (12 N. W. 640), where Mr. Justice Cooley said:

"The profits of running a sawmill are proverbially uncertain, indefinite, and contingent."

The very frank and truthful testimony of the plaintiff upon this subject shows that the contingencies which enter into the business of itinerant threshing are numerous and grave. In our opinion they are much greater than are those attendant upon the operation of a sawmill. *Talcott* v. *Crippen*, 52 Mich. 633 (18 N. W. 392); *Aber* v. *Bratton*, 60 Mich. 357 (27 N. W. 564); *Stevens* v. *Yale*, 113 Mich. 680 (72 N. W. 5); *Dowagiac Manfg. Co.* v. *Corbit*, 127 Mich. 473 (86 N. W. 954, 87 N. W. 886); *Quay* v. *Railway Co.*, 153 Mich. 567 (116 N. W. 1101, 18 L. R. A. [N. S.] 250).

In *Cushing* v. *Seymour, Sabin & Co.*, 30 Minn. 301 (15 N. W. 249), the court there, having under consider-

ation the loss of profits growing out of the unlawful conversion of a threshing machine, said:

"Anticipated profits of this character are too conjectural and uncertain to furnish a proper basis for estimating the compensation to which plaintiffs are entitled for the alleged wrong. This is reasonably apparent, we think, when it is considered that threshing is conducted in the open air and subject to contingencies of weather, breakages, delays, condition and quality of grain and state of roads, and skill and energy in operating the machine, which make it impracticable definitely to ascertain what the profits of performing particular threshing contracts will be."

On this branch of the case the learned circuit judge charged the jury as follows:

"You will further inquire and determine whether plaintiff has suffered any special damages by way of loss of profits or use of the machine. And upon this question of special damages, if you find plaintiff has been damaged in this particular, you will allow him such amount as will reasonably compensate him for the loss of profits, lost by reason of being deprived of the possession and use of this machine through the unlawful conduct of the defendant."

It follows from our views, as expressed above, that this instruction was erroneous.

As to the second error of which complaint is made, we find the following testimony was admitted over objections:

"*Q.* Now, Mr. Truman, at the time you were engaged in the purchase of this machine, I ask you what representations were made to you by the agent of the J. I. Case Threshing Machine Company as to the profits, and the amount you could make with this machine before the first payment would become due September 20, 1909?

"*A.* He said I ought to be able to make $700 or $800 with the machine."

This testimony was clearly incompetent. The whole contract was in writing and contained no such warranty.

The statement, if made, amounted to no more than the ordinary "puffing" used by salesmen generally. Even if

the question of profits had been properly before the jury for consideration, this testimony should have been excluded. *McCray Refrigerator, etc., Co.* v. *Woods & Zent,* 99 Mich. 269 (58 N. W. 320, 41 Am. St. Rep. 599); *Detroit Shipbuilding Co.* v. *Comstock,* 144 Mich. 516 (108 N. W. 286).

The third error we will consider relates to a portion of the charge. Upon the question of the right of defendant to take possession of the machine under the terms of the mortgage, the court charged as follows:

"Evidence has been offered by defendant tending to show it felt insecure and so seized the property in question. The mortgage gave defendant that right, if in fact, acting in good faith, it felt itself insecure, as by it claimed. The first question for this jury to consider is the good faith of the defendant, and whether or not there were any reasons as a basis for it to act. You are not to judge of the sufficiency of the reasons, or whether you would have acted as did the defendant under the same circumstances, but you are to take into consideration all the facts as shown by the evidence on which the defendant claimed it was acting, and determine from such evidence whether or not any reasons existed and were known to the defendant at the time on which it might in good faith act, and whether or not it did act in good faith in seizing said property. The reasons given may not appeal to you as good reasons, yet the defendant may have acted in entire good faith; and, if you find that to be the fact, the defendant would not be liable in this case, and your verdict under such circumstances must be no cause of action. If you find that the defendant in this case acted in good faith in the belief that it was insecure, it was justified in taking possession at the time and in the manner it did, even though the reasons assigned may not be regarded as sufficient ones by the jury. In other words, it is not necessary that it should appear that the mortgagee was in fact insecure. By the terms of the mortgage a certain discretion is vested in the mortgagee, of which the jury cannot divest it, so long as that discretion is honestly exercised. And if you find in this case that the agent of defendant sent to investigate this claim, if he was sent, reported, giving his version and his conclusion thereon, you are not to question the judgment of such agent, how-

ever erroneous it may have been, if you find it was based on an honest belief that the defendant was insecure in its security. If you find the defendant acted in good faith in taking the property at the time and manner claimed, then in this case there would be no conversion, and your verdict would be in favor of the defendant, and in that event there would be no need to consider the question of damages. * * * The defendant had no right to act arbitrarily, and, before it took possession of the property for any other reason than default in payment, it must have had reasonable cause for believing that it was in danger of having its security impaired, either by reason of the neglect of the plaintiff to give proper care to the machinery, or by reason of his careless use of the same, or by reason of apprehension that the plaintiff would attempt to dispose of the property or to remove the same to some place that he had no right to take it under the terms of the mortgage. In other words, that the defendant in good faith actually believed, or had good reason to believe, that the plaintiff was in some way doing or attempting to do with the machinery that which was liable to impair its security. And, as bearing upon the question of the good faith of the defendant in taking possession of this property, you should consider all the testimony in the case, what, if anything, the defendant did in good faith in an effort to ascertain the condition of this property, the action of the plaintiff toward it, and all of the circumstances surrounding this transaction. * * * The burden of proof in this case is upon the defendant, and the defendant must satisfy you by a fair preponderance of all the evidence that it *believed and had good reason to believe that its security was in danger of being impaired, and that there was ground for such belief, and that it acted in good faith in seizing this property,* otherwise the plaintiff would be entitled to recover under the instructions which I have given you and will give you hereafter. Upon all the rest of the questions in this case the burden of proof is upon the plaintiff in this case."

These instructions are contradictory. In one portion thereof the jury are told that, whether the reasons which actuated the defendant were, in the estimation of the jury, good or not, the plaintiff could not recover if defendant acted in good faith. Later it is said the defendant must

show by a fair preponderance of the evidence that it believed *and had good reason to believe* that its security was in danger of being impaired. The infirmity in this instruction is exactly that pointed out in the case of *Woods* v. *Gaar, Scott & Co.*, 93 Mich. 143 (53 N. W. 14).

The other assignments of error need not be considered as they are not likely to arise upon another trial.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, McALVAY, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.