CANFIELD v. TOWNSHIP OF GUN PLAINS.

1. HIGHWAYS AND STREETS—DEFECTS—MUNICIPAL CORPORATIONS—NEGLIGENCE.

No evidence of notice or knowledge that a highway had become slightly undermined near the edge of a fill of about 70 or 80 feet long and three feet deep appearing in the record, it was error to submit that question to the jury in an action for injuries to plaintiff's separator which was damaged by falling down the embankment, at a point where the traveled portion was safe and of sufficient width for traffic.[1]

2. SAME.

Upon testimony in plaintiff's behalf that the separator, which was attached to his engine by a chain allowing a play of about 10 inches, commenced to deviate from the road just before passing on the fill in the highway, and that he proceeded upwards of two rods thereafter without paying any attention to the separator which slipped down the side at a point where the highway was about nine

[1] The question of the liability of townships for defects in highways is discussed in a note in 13 L. R. A. (N. S.) 1219.

feet wide, the court should have instructed the jury that plaintiff was guilty of contributory negligence; the fill being wide enough to allow the machines to pass if reasonable precautions were adopted.

3. Same—Guards.

From the absence of a railing or guards at the side of a three foot fill, of the width of nine to eleven feet, negligence should not be inferred.

Error to Allegan; Cross, J. Submitted April 9, 1913. (Docket No. 13.) Decided May 28, 1913.

Case by Boaz Canfield against the township of Gun Plains for injuries to plaintiff's threshing outfit occurring on the highway. Judgment for plaintiff. Defendant brings error. Reversed.

*Edward J. Anderson,* for appellant.

*Charles L. Dibble,* for appellee.

*Laurence W. Smith,* for Michigan Threshing Men's Association, *amicus curiœ.*

Brooke, J. Plaintiff recovered a judgment against defendant for $100 for damages to a threshing machine and for loss of profits while said machine was being repaired. Plaintiff's outfit consisted of an engine weighing six tons and a separator weighing three tons. From outside to outside the wheels of the engine were 6 feet 8 inches, with a tread of 17 inches. The outside measurement of the front wheels of the separator was 6 feet, and of the rear wheels somewhat more, with a tread of 6 or 8 inches. In moving from place to place plaintiff hitched the separator behind the engine. The tongue of the separator was the length of an ordinary wagon tongue, and was fastened with a chain, which allowed a play of about 8 or 10 inches. At the point where the accident occurred, there was a slight fill in the highway about 70 or 80 feet long, and from 9 to 11 feet wide. The fill ran

east and west, and the ditch upon the north side was approximately 3 feet deep.

There was a small hill at the west end of the fill. At the foot of this hill, and as the plaintiff with his outfit entered upon the fill, the rear wheels of the separator commenced to veer from the beaten wagon track towards the north. The distance between the northerly track of the road to the edge of the fill is variously given in the record, but was probably approximately three feet. This space was covered with sod.

Plaintiff himself was steering the engine. The farther he proceeded in an easterly direction upon the fill the more the rear wheels of the separator tended toward the north, until, after running thus some two rods or more, the northerly rear wheel reached the edge of the fill, the sod broke down, and the separator tipped over on its side. In falling some attachments were broken.

Plaintiff paid out for the parts necessary to repair the machine $29.85, and testified that after the repairs were made the separator was worth $100 less than it was before the accident. The machine was idle one week while the repairs were being made, and plaintiff was permitted to testify, over objection, that he lost in profits that week the sum of $100.

Plaintiff's first witness, John Honeysett, described the situation at the fill as follows:

"*Q.* You could see just how the fill was when you went over it in broad daylight?

"*A.* I could see that all right. There were a few bushes there, down further where he tipped over; none right on the bank. It's all clear. There are some alders and blackberry brush on the other side. I don't know why you could not see the ground if you looked. He had 20 feet he could turn to the right, if it was not for the brush. I presume likely some of them were low brush, and some of them were probably higher than my head. He could not tip over on that side.

These bushes were about as high as my head; some about as large as your finger, and some might be bigger. It was no trouble to run an engine over them, if they wanted to. I know of a number of threshing machines going along that road for years before. They had no trouble to my knowledge. I did not notice any washing along there at where the hind wheel went down. I was not over that road much that spring and summer as I have been the years before."

Plaintiff himself testified:

"Jack [Honeysett] went clear to the corner to a point where I could see the fill where the machine went over. Jack went down to show me the bad places. The embankment down on one side and plenty of room on the other. He said: 'That is all right; that looks all right.' I looked at it and saw it right there for a distance. * * * When I struck the fill, I could see the whole length of it."

Plaintiff further testified that the space between the north wheel track and the edge of the fill was covered with sod, and that it was undermined a little. Further:

"I did not say I could put the shovel in under the bank. I could put the shovel in the bank and cave it off; that was after the accident. In walking along there you could not see any defect in the highway. It did not show any defect. * * *

"Q. I want your judgment; do you claim there was any cave under the fill where the hind wheel went down?

"A. There must have been.

"Q. Did you see any?

"A. I saw after it had been caved off.

"Q. You don't know whether there was any there or not, do you?

"A. There wasn't any when the separator wheel crushed it down.

"Q. How do you know there was before?

"A. What is the use of saying I know, when I don't know?"

Plaintiff further testified that neither he nor

Meacham, who was in the cab with him running the engine, looked back to see if the separator was all right.

"*Q.* You were not paying any attention to the separator, nor the men behind? Tell the jury whether you were or not.

"*A.* We couldn't see it.

"*Q.* Were you paying any attention to that?

"*A.* If we had been, it would not have happened."

On behalf of defendant, Charles Fullegar testified in part as follows:

"I live in Gun Plains township. Have for 44 years. About three-fourths of a mile across from Rumble's. Have been on the Rumble place hundreds of times. Did threshing there for 12 years with a traction engine. Have been over that road in front of Rumble's as many as 20 times with a traction engine and separator. I had a short tongue, and didn't have any chain in the tongue. Never had any trouble getting over it. I was there the day they got the engine out. Never had been any washouts in that road. I noticed the wheel track in the sod. I should say between two and three rods."

At the conclusion of the testimony defendant requested the court to direct a verdict in its favor upon the following grounds:

"Under the undisputed evidence in this case the plaintiff was guilty of contributory negligence at the time the separator tipped over; and hence he cannot recover. Under the undisputed evidence in this case you will return a verdict of no cause of action."

We are of opinion that the motion should have been granted. There is no evidence in the record that the fill, at the point where the accident occurred, was not apparently in reasonable repair and in a condition reasonably safe and convenient for public travel. In other words, assuming that the north bank of the fill at the point in question had become slightly undermined, thus tending to facilitate the happening of the

accident, there is no evidence that the defendant had either knowledge or notice of the alleged defect. Indeed, plaintiff himself testified that:

"In walking along there you could not see any defect in the highway. It did not show any defect."

Aside from this the record clearly establishes the fact that several other threshermen had passed over this fill in safety many times with their outfits. Plaintiff himself had propelled his engine, weighing twice as much as his separator, past the alleged defective spot in safety. The accident occurred, not because the fill was not sufficient to sustain the weight of the separator, but because plaintiff failed to take the necessary precautions to keep the separator traveling properly behind the engine.

Whether ordinary care requires the construction of a railing by the sides of a steep embankment is frequently a question for the jury (*Malloy* v. *Township of Walker*, 77 Mich. 448 [43 N. W. 1012, 6 L. R. A. 695]); but we are of opinion that the case at bar is not one in which the jury should be permitted to infer negligence from the absence of such barriers. Nor can such an inference be drawn from the fact that the fill was only from nine to eleven feet wide. In practically every municipality in the State such fills exist. To predicate liability upon a failure to guard, by railing, a fill of only three or four feet on a level highway would, we think, impose upon municipalities a duty greater than the statute imposes.

Plaintiff's evidence as to prospective profits was improperly admitted. *Truman* v. *Threshing Machine Co.*, 169 Mich. 153 (135 N. W. 89), and cases there cited.

The judgment is reversed and a new trial ordered.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.