H. W. WILLIAMS TRANSPORTATION LINE *v.* DARIUS COLE TRANSPORTATION CO.

1. SALE—WRITTEN CONTRACT—WARRANTY — PAROL REPRESENTATIONS.
    Where, at the request of a purchaser of chattels, the representations made by the seller in the course of the negotiations are incorporated in the written contract in the form of a warranty, such warranty, in the absence of fraud, becomes the measure of the purchaser's rights, and the alleged falsity of the parol representations can afford him no ground for relief.

2. SAME—RESCISSION FOR BREACH OF WARRANTY.
    An executed contract of sale cannot be rescinded for a mere breach of warranty as to the quality of the article sold.
        129 MICH.—14.

Appeal from Van Buren; Carr, J.   Submitted November 20, 1901.   Decided December 30, 1901.

Bill by the H. W. Williams Transportation Line against the Darius Cole Transportation Company to rescind a contract for the purchase of a steamer.   From a decree for complainant, defendant appeals.   Reversed.

*T. J. O'Brien, C. E. Kremer,* and *J. H. Campbell,* for complainant.

*F. C. Harvey* (*John J. Speed,* of counsel), for defendant.

MONTGOMERY, C. J.   The defendant was the owner of the steamer Darius Cole.   Its office was in the city of Detroit.   The complainant is engaged in the business of transporting passengers and freight between South Haven, in this State, and Chicago.   In September, 1899, the complainant purchased of the defendant the steamer Darius Cole for the agreed price of $125,000, a portion of which was paid down, and the balance secured by a mortgage on the vessel.   A preliminary contract was entered into on the 13th day of September, in which the defendant agreed that the Darius Cole was capable of running 15 miles per hour, under suitable conditions; and the bill of sale, executed a few days later, contained a guaranty that the hull, machinery, and boiler of the boat were in sound and perfect condition, and that, "under suitable conditions, she is capable of running, and will run, 15 miles per hour."   The vessel was delivered to the complainant at South Haven in September, 1899.   A defect was discovered in the boiler in March, 1900, when the boat was being fitted out for the season.   The attention of the defendant was called to it, and the repairs were made at defendant's expense; and the warranty, so far as it related to the condition of the boiler, was satisfied.

Complainant placed the boat on the line between South Haven and Chicago, and ran her during the season of

1900, up to the 30th of August. In the meantime, and as early as the 2d of July, the complainant, after making 11 trips with the boat, wrote the defendant that they were not able to get the speed out of her that was guaranteed, and asked that the defendant undertake to do so. The reply of the defendant was to the effect that a test had been made of the boat after the original contract of sale, and before the final delivery, and that she had made more than 15 miles an hour, and that the fault must be with the engineer; that defendant did not consider itself responsible any further in the matter; and expressing the hope that, after the engineer had become more familiar with the vessel, it might be found that she could make the guaranteed speed. After the receipt of this letter, complainant's officers visited Detroit, and some suggestions were made by the former engineer of the boat. They returned, and continued its use, as before stated, until the 30th of August, in their business; the delay being excused, as is stated, by the fact that it was difficult to get expert engineers to make a test of the speed of the boat at that season of the year, they all being busy at the time. It appears, however, that one reason for continuing to use the boat was that it was the busy season,—"the harvest time of the complainant," as its witnesses expressed it,— and that complainant was making money with her. Directly after this date further tests were made in the presence of expert engineers, and the guaranteed speed was not shown, and complainant tendered the boat back to defendant, and filed this bill to have the contract declared rescinded, the mortgage canceled, and to recover the money paid.

There was evidence of statements made by defendant's officers as to the speed of this boat, in which the opinion was expressed that she would make 15 miles an hour, and in which the statement was made by one of the officers ( Mr. Lee) that his understanding was that she had made somewhat better than 16 miles an hour. There is no justification, upon this record, for any claim that the repre-

sentations were fraudulent. It is very clear, too, that they were not relied upon as an inducement to the purchase. The complainant's testimony shows with great clearness that its officers were unwilling to rely upon Mr. Lee's mere belief in the matter, but insisted upon having a guaranty of the speed of the boat. Whatever may have been the rights of the parties before the contract was entered into, we think it is clear that, having insisted upon and relied upon the warranty being embodied in the contract, the complainant's reliance must be upon the written warranty. See *Zimmerman Manfg. Co.* v. *Dolph*, 104 Mich. 281 (62 N. W. 339); *Nichols, Shepard & Co.* v. *Crandall*, 77 Mich. 401 (43 N. W. 875, 6 L. R. A. 412); *Dowagiac Manfg. Co.* v. *Corbit*, 127 Mich. 473 (86 N. W. 954).

The case presents the question, therefore (which is for the first time presented to this court squarely for decision), whether a contract of sale, accompanied by a warranty of quality, gives the purchaser the right to rescind for a breach of the warranty. Complainant's counsel cite a large number of cases from this court where rescission has been permitted in case of false representations, and this though there was an absence of the *scienter*. But these cases rest upon the view which was expressed by the court in *Webster* v. *Bailey*, 31 Mich. 36,—that such representations, even though made without knowledge of their falsity, are tantamount, in legal effect, to a fraud. Such cannot be said of the representations in this case, for no fraud was perpetrated upon the complainant by means of these representations. They were not relied upon as a basis for the contract. We do not mean to be understood that, if there was an active fraud, it would be merged in the writing. But that is not this case. The most that can be claimed is that there were representations which proved to be untrue in fact, even if it be said that they amounted to more than an expression of an opinion. But complainant, so far from relying upon the representations, insisted upon a contract of warranty covering the identical ground.

The question of the right to rescind upon breach of a warranty has been before this court in two cases. The first is *Kimball & Austin Manfg. Co.* v. *Vroman*, 35 Mich. 310 (24 Am. Rep. 558), in which there was a contract of sale of an engine, with a warranty that the engine was in good condition, and that, if not, *it should be made so by the seller*. The court held that the effect of this contract was to give the purchaser a right to a future trial of the engine, and future work upon it, if needed, and placed it on the same footing as if the seller had been a contractor to furnish an engine of its own building, which the purchaser would have a right to return if not such as he had bargained for; and that, under *such* a contract, the acceptance is necessarily conditional, and does not bind the purchaser to keep what is not made to answer the agreement. In the course of the opinion, Mr. Justice Campbell stated the rule as follows:

" Where a party gives no warranty, but is guilty of such fraud as vitiates the contract, it is clear enough that the effect of the fraud is to authorize its entire repudiation. The grievance is that the agreement as it turns out is not the agreement which the party supposed he was making. But where a warranty is given, the legal effect is usually, if not universally, to make the stipulation stand as security for performance; and the injured party prosecutes his remedy upon it to enforce, and not to avoid, the agreement. While a right to return property which does not answer the assurance is not always or generally expressed or implied in the warranty, yet, if agreed upon, it is in no way inconsistent with a warranty."

The next case in Michigan is that of *Murphy* v. *Mc-Graw*, 74 Mich. 318 (41 N. W. 917). In that case the plaintiff was permitted to recover upon the breach of a warranty, upon the ground of total failure of consideration. The court, by Mr. Justice Long, said:

"Counsel for defendant have devoted much space in their brief to the consideration of the question that when there is a warranty as to quality on the sale of goods, but no fraud, and no stipulation that the goods may be returned, though the warranty be broken, the vendee can-

not rescind the contract without the consent of the vendor; that a breach of warranty alone will not justify a return. This may be conceded as well settled as a general proposition, but there may be cases where a purchaser, without returning an article, may yet be allowed to recover its cost."

And in *Murphy* v. *McGraw* a recovery was permitted upon the ground that the property purchased was absolutely without value.

The text-books upon this subject state the rule in accordance with the contention of defendant. 2 Mechem, Sales, § 816, states:

"It is the general rule, as will be more fully seen hereafter, that, in the absence of fraud, or an agreement to rescind, an executed and completed sale, as distinguished from the merely executory one, cannot be rescinded for a mere breach of warranty."

The author states that in a few States, however, the right to rescind is asserted.

In Story, Sales (4th Ed.), § 421, the rule is stated as follows:

"In cases of warranty, where the whole of the goods bargained for are delivered, if there be neither a special agreement entitling the vendee to return the goods, nor an actual return and acceptance by the vendor, nor fraud, the right of the vendee to rescind the contract depends upon whether the contract has been executed, and the goods actually accepted by the vendee, or whether it is executory, and the goods have not been accepted by him. If the contract be executed, and the goods be completely accepted, so as to pass the property therein to the vendee, it is very generally held that he cannot elect to rescind the contract and return the goods, after actually receiving them, so as to entitle him to bring an action for money had and received, but he must declare specially on his warranty."

So, in Benj. Sales (7th Ed.), § 887, it is stated:

"After the property in the specific chattel has passed to the buyer, it may happen that he discovers the goods bought to be different in kind or quality from that which

he had a right to expect, according to the agreement. In such case it is necessary to distinguish whether the defect be one in the performance of a condition or of a warranty. In the former case, he may refuse to accept the goods, and reject the contract, but not in the latter. The reason for this difference is that in the one case the contract itself depends on the performance of the condition precedent incumbent on the vendor, while in the other the principal contract has been performed, and the breach is only of the collateral undertaking of warranty."

If we trace the origin of this doctrine, it is demonstrable that the few States which are said ·to follow the Massachusetts rule, and permit rescission for a mere breach of warranty, are out of line. The English cases begin ·with two cases decided in 1778, — *Power* v.. *Wells*, 2 Cowp. 818, and *Weston* v. *Downes*, 1 Doug. 23. In the first case it was held that an action for money had and received could not be maintained to recover the price paid for a horse warranted sound, and tendered back. This remained the unquestioned law until 1800, when, in *Curtis* v. *Hannay*, 3 Esp. 82, Lord Eldon held that if, upon the sale of a horse, it was warranted, and it afterwards turns out that the horse is unsound, the buyer may return the horse, and bring an action for the price. This case is approved by some of the cases cited by complainant's counsel. But in 1831, in *Street* v. *Blay*, 2 Barn. & Adol. 456, which may be said to have become a leading case upon the subject, it was said by Lord Tenterden, C. J.:

" It is, however, extremely difficult—indeed, impossible —to reconcile this doctrine with those cases in which it has been held that where the property in the specific chattel has passed to the vendee, and the price has been paid, he has no right, upon the breach of the warranty, to return the article and revest the property in the vendor, and recover the price as money paid on a consideration which has failed, but must sue upon the warranty, unless there has been a condition in the contract authorizing the return, or the vendor has received back the chattel, and has thereby consented to rescind the contract, or has been guilty of a fraud which destroys the contract altogether,"—citing *Weston* v. *Downes* and *Power* v. *Wells*, and saying:

" If these cases are rightly decided,—and we think they are, and they certainly have been always acted upon,—it is clear that the purchaser cannot, by his own act alone, unless in the excepted cases above mentioned, revest the property in the seller, and recover the price, when paid, on the ground of the total failure of consideration; and it seems to follow that he cannot, by the same means, protect himself from the payment of the price on the same ground."

See, also, *Gompertz* v. *Denton*, 1 Cromp. & M. 207.

In this country the doctrine of *Street* v. *Blay* has been generally followed. See *Gillespie* v. *Torrance*, 25 N. Y. 310 (82 Am. Dec. 355), and cases cited; *Freyman* v. *Knecht*, 78 Pa. St. 144; *Allen* v. *Anderson*, 3 Humph. 583 (39 Am. Dec. 197); *Lyon* v. *Bertram*, 20 How. 154, citing with approval *Thornton* v. *Wynn*, 12 Wheat. 183; *Trumbull* v. *O'Hara*, 71 Conn. 180 (41 Atl. 546); *Matteson* v. *Holt*, 45 Vt. 341, and cases cited; *Wright* v. *Davenport*, 44 Tex. 164; *Lynch* v. *Curfman*, 65 Minn. 174 (68 N. W. 5); *Hoover* v. *Sidener*, 98 Ind. 293; *Woodruff* v. *Graddy*, 91 Ga. 335 (17 S. E. 264, 44 Am. St. Rep. 33); *Owens* v. *Sturges*, 67 Ill. 367, 368; *Lightburn* v. *Cooper*, 1 Dana, 273; *Woodward* v. *Emmons*, 61 N. J. Law, 285 (39 Atl. 703).

The cases are collated and reviewed in 1 Smith, Lead. Cas., under the case of *Chandelor* v. *Lopus*, at page 353 (*275), in which it is stated:

"A failure to perform an executory contract on one side may invalidate the obligation on the other; but a warranty is essentially a collateral and independent stipulation, attending on the agreement, and surviving its execution. It is accordingly well settled that a mere breach of warranty, unattended by fraud, does not entitle the vendee to rescind the contract or return the goods."

And at page 326 (*257), after treating of the sale of goods by sample, the authors say:

" But there is this difference between such a warranty and an express warranty of a specific chattel *in esse*, which the buyer has had an opportunity to inspect before

receiving it: In the latter case he cannot effectually tender back or return the goods, so as to obtain a defense in an action for the price, unless there be a condition in the contract authorizing the return, or the seller has been guilty of a fraud which destroys the contract altogether," —citing *Street* v. *Blay* and other cases.

We think that *Street* v. *Blay* states the logical rule. We find ourselves at liberty to follow it, and therefore hold that this complainant had not the right to rescind the contract when the attempt to do so was made. We need not, therefore, discuss another question, which impresses us as at least very doubtful, namely, whether, if complainant had that right, it has not waived it, after discovering that the vessel did not answer the terms of the warranty.

The decree will be reversed and the bill dismissed, without prejudice, with costs of both courts to defendant.

HOOKER, MOORE, and GRANT, JJ., concurred. LONG, J., did not sit.