## DETROIT SHIPBUILDING CO. *v.* COMSTOCK.[1]

1. SALES—WARRANTY—REPRESENTATIONS BY SELLER—EFFECT.
   In an action for the price of a steam boiler sold by a written contract to take the place of one in use, evidence that the sellers represented that the new boiler would give defendants much greater capacity, steam pressure, power, and economy than the old boiler ever did, amounts at most to evidence of a parol warranty.

2. SAME—WARRANTY—WRITTEN CONTRACT—IMPLIED WARRANTY.
   Where a steam boiler is sold by a written contract in which no warranty is made, the only warranty that can be asserted is an implied one.

3. SAME—PAROL EVIDENCE.
   Parol evidence is not admissible to add to an unambiguous writing facts which may aid the implication of a warranty.

4. SAME—WARRANTY—SUITABLENESS FOR PURPOSE INTENDED.
   A contract to build and install in a steamship a boiler of a particular size and type is fulfilled by the installation of one of correct workmanship and materials that does the work reasonably to be expected of a boiler of that size and type, though it fails to accomplish all that the parties hoped it would.

Error to Wayne; Brooke, J. Submitted April 4, 1906. (Docket No. 9.) Decided July 3, 1906.

Assumpsit by the Detroit Shipbuilding Company against Andrew W. Comstock and another upon a promissory note. There was judgment for plaintiff, and defendants bring error. Affirmed.

*Moore & Moore,* for appellants.

*Miller, Smith, Alexander & Paddock,* for appellee.

OSTRANDER, J. The declaration of the plaintiff contained the common counts in assumpsit, with notice, and

---

[1] Rehearing denied November 7, 1906.

copy, of a promissory note. Plaintiff's case was made by introducing the note in evidence and testimony of the amount due thereon. With the plea, defendants gave notice of special matters of defense and filed a bill of the particulars of their set-off and recoupment. There was a jury trial, and a verdict for plaintiff. Motion for a new trial was denied.

The note sued upon represented a part of the purchase price of a steam boiler, manufactured and sold by plaintiff to defendants under a written contract therefor. Negotiations for the manufacture and purchase of the boiler were begun in January, 1902. A written proposition was submitted by the plaintiff for two types of boiler and for removing and replacing the cylinder of the engine of the boat. February 25, 1902, one of the defendants wrote plaintiff that he was expecting to give it an order, having arrived at that conclusion, for one of the types mentioned in the proposal. At about the same time, the other defendant wrote: "We have decided to build a Scotch type boiler"—being the same type mentioned in letter of February 25th. Another letter of February 27th is to the effect that Mr. Comstock will be in Detroit March 4th and 5th and take up the boiler matter. The result was the agreement here set out:

"This agreement made this 6th day of March, 1902, by and between the Detroit Shipbuilding Co., party of the first part, and A. W. Comstock and Alex. R. Sinclair, of the second part,

"*Witnesseth:* The party of the first part agrees to build for said parties of the second part for the steamer Simon Langell, one fire-box boiler 11' 6" diameter, 14' long, with double fire-box, to be allowed 125 lbs. steam, furnish new stack, breeching, set of grate bars and bridge walls, place it in the ship, fit rolling braces, and pipe it up ready for service, new mountings and stop valves, and cover boiler and main steam pipes, for the sum of ninety-four hundred dollars ($9,400) and the old boiler.

"The parties of the second part agree to place said steamer at the Shipbuilding Co.'s dock on or before the

close of navigation season 1902, and do all necessary cut-
ting away and putting back of boiler-house.

"The parties of the second part agree to make payments
as follows: On August 1, 1902, $700; September 1, 1902,
$1,000; October 1, 1902, $1,000; November 1, 1902,
$1,000; December 1, 1902, $1,000, and note for balance
($4,700), payable 6 months after the work is finished
ready for steam, said note to draw interest at 5 per cent.
per annum, beginning three months from date of same."

The boiler was placed in the vessel during the winter
of 1902, was used during the season of 1903, payments
were made on the purchase price, the last one May 28,
1903. Defendants finally disposed of the boiler and re-
fused to pay the remainder of the purchase price. They
are in the position of affirming the contract and suing
for damages for breach thereof.

They claimed the right to show that they were induced
to purchase the boiler by false and fraudulent representa-
tions of plaintiff that it would have a greater capacity,
furnish more steam, and be more economical than the old
boiler, say the testimony offered for this purpose was im-
properly excluded, and rely in this behalf upon *Peck* v.
*Jenison*, 99 Mich. 326; *Kranich* v. *Sherwood*, 92 Mich.
397; *Match* v. *Hunt*, 38 Mich. 1; *Picard* v. *McCormick*,
11 Mich. 68; *Kost* v. *Bender*, 25 Mich. 515; *Maxted* v.
*Fowler*, 94 Mich. 106; *Perkins Windmill Co.* v. *Kelly*,
141 Mich. 459.

No testimony was offered which had a tendency to es-
tablish the proposition that plaintiff made any representa-
tions, at any time, which were known or supposed to be
false. On the contrary, it is evident that plaintiff desired
to give satisfaction and believed the boiler furnished
would do the work such a type was rated and expected to
do. Without setting out the testimony in question, it was
claimed for it that it tended to show that plaintiff, a boiler-
maker, assured defendants that it knew just what they
wanted, and, if defendants would sign the contract in
question and leave it to plaintiff, the plaintiff would make
them a boiler which would give them greater capacity,

steam pressure, power, and economy than the old boiler ever did, and be more satisfactory than the old boiler ever was; that defendants relied upon the representations and, believing them true, signed the contract. At most, this amounted to evidence of a parol warranty. No warranty is found in the written contract. The court was not in error in ruling, as it did, that the only warranty which could be asserted was an implied warranty. *Nichols, Shepard & Co.* v. *Crandall,* 77 Mich. 401 (6 L. R. A. 412).

According to the contentions of defendants, the implied warranty was that, the purpose being to furnish steam for a certain steamboat, equipped with a certain engine, and expected to perform certain work, the boiler was warranted to perform as defendants hoped it would perform; in other words, the same alleged parol representations, made prior to the execution of the written contract and not contained in it, are sought to be added to the contract to support an implied warranty. That parol evidence is not admissible to add to an unambiguous writing facts which may aid the implication of a warranty, see *McCray Refrigerator, etc., Co.* v. *Woods & Zent,* 99 Mich. 269, 275.

Upon the question of the suitableness and quality of the boiler, both parties offered testimony at length. The court, as requested by counsel for defendants, charged the jury in the following language:

"1. If you find that a steam boiler of the fire-box pattern, 11 feet and a half in diameter by 14 feet in length, could have been constructed so as to have been reasonably suitable for the purpose for which it was purchased, then it was the duty of the plaintiff to construct and place in said steamship, Simon Langell, a boiler reasonably suitable for the purpose for which it was constructed, to wit, for the purpose of supplying a suitable quantity of steam to the engine of said steamship, when said steamship was navigating the Great Lakes.

"2. It was the duty of the plaintiff to furnish a steam boiler reasonably suitable for the purpose for which it was

to be used, as already explained, 11 feet 6 by 14 feet, and if you find that such a boiler was not furnished, then the plaintiff was guilty of a breach of the contract on its part.

"3. If you find under the instructions already given that the plaintiff was guilty of a breach of contract, then the defendants will be entitled to recoup in this action the difference between the value of the boiler furnished and its value as it would have been if the boiler had been reasonably suitable for the purpose for which it was purchased, and also the loss the defendants necessarily sustained in the operation of their steamship, and which was caused solely by reason of the boiler being unsuitable for the purpose for which it was purchased, provided the defendants acted with reasonable prudence, care, and discretion, and discontinued the use of the boiler at a reasonable and suitable time, so as to make the loss as small as practicable."

This was fair to defendants, and submitted to them the issues of fact which the testimony properly presented.

A further contention is that both parties agreed after trial of the boiler that it was not reasonably suitable. The testimony referred to establishes no such fact, unless the definitions and theory of defendants as to suitableness be used. The boiler did not, it seems, furnish the horse power expected by defendants in connection with the engine they had. It is not important to go over the questions of specific unsuitableness which are discussed in the briefs. What has been said disposes of all debated questions.

The judgment is affirmed.

Grant, Blair, Montgomery, and Hooker, JJ., concurred.