WITTEMAN CO. *v.* BECK MALTING & BREWING CO.

1. FRAUD—WARRANTY—DISTINCTIONS—SALES.

Representations made by plaintiff in obtaining a contract from defendant to install a carbonating system in its brewery, that such system would enable the defendant to manufacture beer in 15 days, instead of requiring four or five months, as had been required theretofore, and it would thus increase the capacity of the brewery three or four times, amounted only to a parol warranty, and was not ground for the rescission of a written contract of sale and for the installation of the carbonating system, in which contract no warranty appeared.

2. SAME—EVIDENCE—SALES.

Parol evidence is not admissible to add to an unambiguous writing statements or representations from which a parol warranty may be inferred or implied.

Error to Alpena; Emerick, J. Submitted October 9, 1914. (Docket No. 64.) Decided December 18, 1914. Rehearing denied April 28, 1915.

Assumpsit by the Witteman Company against the Beck Malting & Brewing Company for the price of

machinery sold and delivered. Judgment for defendant. Plaintiff brings error. Reversed.

*L. G. Da Foe* (*Alex J. Groesbeck*, of counsel), for appellant.

*Joseph H. Cobb,* for appellee.

KUHN, J. This action arose out of a contract for the sale by plaintiff to defendant of a beer carbonating system, to be installed by plaintiff in defendant's brewery. The contract, dated February 28, 1912, contained, along with provisions which were specifications of the machinery, the following:

"Our expert to erect these plants and remain a sufficient time until your employees are sufficiently posted and competent to operate the system. * * *

"We to install this plant on 30 days' trial.

"The consideration on your part to be the payment of the following amount: $4,600, namely: Thirty days from first operation of the plant, $1,000 cash, and 15 monthly installments of $250 each. * * *

"We agree to complete the outfit on or before June 1, 1912"

—but contained no warranties.

The machinery was installed by plaintiff's engineer, and first used on May 23, 1913, and the defendant's employees were instructed how to operate it. After it began to use the system, the defendant complained of "cloudy" beer, and was obliged to take back considerable quantities from its customers. The change in the flavor of the beer was discussed with plaintiff's agents Skinner and Ketler, and after one of these conversations defendant ordered another filter, in the hope that the carbonating system would give satisfaction if two filters were used. The plaintiff made repeated requests for payment, but several months elapsed before the additional filter could be had and

set up, and, before the defendant had satisfied itself with further tests of the machinery, the plaintiff instituted suit to recover the purchase price of the machinery.

The defendant in its defense gave notice of recoupment and claimed damages to the amount of $10,000. By the old process of manufacturing beer, which defendant had used before the carbonating system was installed, it went through the stages of boiling, cooling, settling, and fermenting during the first 15 days, after which it was stored successively in standards and chip casks about 6 weeks and was then ready for sale. In this brewery, while the beer was in the chip casks, in order to give it foam, sparkle, and life, a small quantity of new beer, made from sugar, was added to the old beer, which process is known as "krising," and generally took about 14 days of time. It is claimed for this carbonating system that it forces carbonic acid gas into the beer as it is drawn off, giving it the foam and sparkle, and thus dispenses with this secondary fermentation under the old method.

It was claimed by the defendant that plaintiff's salesman, in negotiating the sale before the contract was entered into, represented to it that by the use of the carbonating system the beer could be carbonated when it was 15 days old, without the aid of an additional filter, and be as good beer as defendant had been making by the old process in about 2 months, and that defendant could by the use of this system increase its capacity two or three times; that the first run of beer through the carbonating system was unsatisfactory, and the plaintiff's engineer Skinner promised to have a man sent to correct this matter; that when plaintiff's engineer Ketler came he informed the defendant that it must have another filter and the beer must be 6 weeks old instead of 15 days old. These

claims were denied by the plaintiff, and evidence was introduced in support of the contentions of the parties to the controversy. The learned trial judge instructed the jury that if plaintiff's agent represented to defendant that the carbonating system could be used successfully on 15-day beer and would increase defendant's capacity two or three times, and the representation was false, the defendant would have a right to rescind the contract and be relieved from payment, provided it acted with reasonable promptness, and that circumstances might have existed which would allow it more than 30 days to exercise the right.

The jury found for the defendant, allowing it six cents damages, and the case is brought here for the, review of 32 alleged errors. Those upon which the plaintiff relies may be stated as follows:

(1) The admission of testimony in support of defendant's claim that it was fraudulently induced to enter into the contract by the false representations of plaintiff's agent.

(2) The admission of testimony in support of defendant's claim for recoupment of damages on account of bad beer.

(3) The refusal of the court to direct a verdict on the ground that defendant did not exercise its alleged right to rescind promptly.

This case is planted in the pleadings, and was tried, upon the theory that the contract in question was obtained by fraud, and it was under this theory that the learned trial judge in a clear charge submitted the case to the jury.

It is urged that what the defendant is attempting to do, in effect, is to add to the contract entered into by the parties warranties not contained therein, and it is insisted that the rule that there cannot be read into a written contract an express oral warranty should not be evaded by calling facts which constitute

an express oral warranty by another name, "fraud." In support of appellant's claim the case of *Detroit Shipbuilding Co.* v. *Comstock*, 144 Mich. 516 (108 N. W. 286), is relied upon.

We are unable to distinguish the instant case from that case, in principle, as it is clear that the representations the defendant here relies upon to show fraud, viz., that the carbonating system would take beer 15 days old and make as good beer as that which had been allowed to stand in the casks for a period of 4 or 5 months, and thus increase the capacity of the brewery three or four times, are warranties. As it was said in the *Comstock Case* with reference to such representations: "At most, this amounted to evidence of a parol warranty." Under this authority we see no escape from the conclusion that the trial court should have ruled out all the evidence with relation to such representations. We quote again from the *Comstock Case* (144 Mich. 519, 108 N. W. 287) :

"That parol evidence is not admissible to add to an unambiguous writing facts which may aid the implication of warranty, see *McCray Refrigerator, etc., Co.* v. *Woods & Zent*, 99 Mich. 269, 275 [58 N. W. 320, 41 Am. St. Rep. 599]."

As there is no question in this case of an implied warranty arising out of the contract, as there was in the *Comstock Case*, with the elimination of the testimony with reference to the representations, there was nothing to submit to the jury, and a verdict should have been directed for the plaintiff. As no judgment can be entered here, the case will be reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE. and STEERE, JJ., concurred.