LINDERMAN MACHINE CO. *v.* SHAW-WALKER CO.

1. SALES — BREACH OF WARRANTY — PAROL WARRANTY — WRITTEN CONTRACT.

   Where the agent of the seller of a machine known as a dovetail glue jointer represented that it would save defendant over $3,000 a year, and that certain lumber or material could be put in the machine without other process, and that the rip saw of the defendant buyer could be used in connection with the machine, evidence of the oral representations, claimed to have been false and fraudulent, was not admissible to change a written contract containing guaranties and other details of the agreement of the parties; the trial court properly directed a verdict for the plaintiff as against such objections.[1]

2. SAME—CONTRACTS—ELECTION OF REMEDY—RESCISSION OF CONTRACT—ESTOPPEL.

   Where defendant kept the machine which it bought and used it during a considerable period of time, down to the trial of the case, it was estopped from setting up a rescission of the contract, as a defense to an action for the price.

3. SAME—EVIDENCE—PLEADING.

   Plaintiff was not required to plead the conduct of the defendant in retaining and in making use of the machine; the evidence was admissible in rebuttal of or on cross-examination of defendant's witnesses and was proper rebuttal to the defense that the buyer had rescinded the transaction.

Error to Muskegon; Sullivan, J. Submitted April 13, 1915. (Docket No. 74.) Decided June 14, 1915.

Assumpsit by the Linderman Machine Company against the Shaw-Walker Company for the value of

---

[1] As to right to show parol warranty in connection with contract for sale of personalty, see note in 19 L. R. A. (N. S.) 1183.

certain machinery. Judgment for plaintiff. Defendant brings error. Affirmed.

*Clink & Farmer,* for appellant.

*Cross, Vanderwerp, Foote & Ross,* for appellee.

STONE J. Action of assumpsit to recover the price and value of a machine known as a standard five-foot Linderman automatic dovetail glue jointer, sold by the plaintiff to the defendant in the summer of 1912. The plaintiff is a corporation located in the city of Muskegon, whose business consisted wholly, or in part, of the manufacture of wood-working machinery. The defendant was engaged in the manufacture of various classes of woodwork, such as filing cabinets, bookcases, desks, etc. The declaration was upon the common counts in assumpsit; the plea was the general issue, with a notice: That upon the trial of the case the defendant would insist in its defense that, for the purpose of making the sale of the jointer to the said defendant, for the recovery of the value of which this suit was brought, and with intent to induce said defendant to purchase said machine, the said plaintiff falsely, fraudulently, and deceitfully stated and represented to the said defendant:

(1) That there would be a saving to defendant of over $3,000 a year by the installation of the said machine; (2) that five-eighths inch beech, and other lumber could be taken from the crosscut saw and placed in the machine directly, without edging or other process; (3) that the ripsaw then in use by the defendant could be used with said machine; which statements and representations were wholly false and deceitful, and were known by the plaintiff so to be at the time of the making thereof, and were made for the purpose of deceiving and defrauding said defendant by falsely and fraudulently inducing it to purchase said Linderman machine, which said defendant, believing and relying upon, did purchase.

It concluded as follows:

"That the said defendant will insist, upon the trial of said cause, that by reason of the facts set forth said defendant is absolutely released from any liability for the value of the said standard five-foot Linderman automatic dovetail glue jointer, and that the contract for the sale thereof was and is void."

The contract was offered in evidence by the plaintiff, and, among other things, contained the following clauses:

"Guarantee. We guarantee the workmanship and material on this machine to be of suitable quality, and will agree to furnish without charge new parts to replace any which shall prove defective in material or workmanship within one year of putting this machine in operation."

"Price and Terms. The price at which we will furnish this machine is $3,750 f. o. b. cars Muskegon, Michigan, payable in sixty day installments covering a period of twelve or fifteen months."

Upon introduction of the contract in evidence, and evidence showing the installation of the machine and the nonpayment of the purchase price, the plaintiff rested its case. The defendant, not claiming any breach of warranty, placed its defense upon the ground that the plaintiff made false and fraudulent representations, as set forth in the notice attached to the plea. The evidence of the defendant tended to show that, from time to time, complaints were made by the defendant to the plaintiff of the work done by the machine, and that it did not accomplish the savings to the defendant which the plaintiff represented it would, and that the plaintiff, until some time in the spring of 1913, assisted in operating the machine to demonstrate that it would accomplish all that was recommended, and that these trials of the machine continued until shortly before suit was brought. It appears undisputed that certain correspondence took place be-

tween the parties, and that on July 2, 1913, the defendant stated in its letter of complaint to the plaintiff, among other things, the following:

"We must say that we are very much disappointed with the trial of this machine. The work that we have just completed does not indicate any advantage to us whatsoever.   *   *   *   We are closing our shop for ten days now, and this is a good opportunity to have the machine taken down and loaded, and we would ask that you kindly make arrangements promptly to that end."

In reply to this, by a letter which seems to be undated, the plaintiff said:

"We have spent considerable time and money in our efforts to have your mechanical department take advantage of the savings offered by the Linderman machine, and our efforts seem to have been rewarded."

Under date of July 22, 1913, defendant wrote plaintiff again, stating, among other things, the following:

"Regardless of any discussion as to the merits or faults of the Linderman machine, the fact remains that it is not satisfactory to us. It has fallen far short of our expectations in every way. It was the idea in trying this machine that it would save a lot of money, and that we were to be the judge of its efficiency.

"We feel that this experiment has been costly to us, and we think that we have acted entirely in good faith. We again ask you to make arrangements at your earliest convenience to remove your machine."

There was no reply to this letter. Again, on July 25, 1913, the defendant wrote plaintiff another letter, in which it said:

"We are anxious to have you remove your Linderman dovetail jointer immediately.

"This machine takes up room necessary for equipping to run our joints in the old way. We cannot get squared around again until the machine is removed.

"Will you please give this matter your immediate attention?"

This suit was begun July 28, 1913, and was tried at the circuit early in February, 1914. It appeared undisputed upon the trial of the case that the defendant continued to use this machine down to the time of the trial; in fact it appeared that it was then using the machine.

Numerous objections were made on the part of the plaintiff to the introduction of evidence in support of the notice under the plea, upon the ground that the numerous statements relied upon by the defendant did not amount to false and fraudulent representations, but that they were merely "sellers' talk," as to what the machine would accomplish under certain conditions; even if the machine failed to accomplish this saving, they were not false representations as to actual existing conditions. This evidence was at first received by the trial court, but later a verdict was directed for the plaintiff for the whole amount of its claim, and judgment was entered thereon.

There seems to have been a good deal of colloquy between court and counsel during the trial of the case. The court, after calling attention to the notice, asked defendant's counsel whether he meant that there was a sale or not, to which defendant's counsel answered as follows:

"My idea is this: If we recover, that the verdict should be no cause of action, and that that would leave it right where it was before; that is, the plaintiff would have to take this machine and go home with it, and that is all there would be to it.

"*The Court:* The court got the idea from the whole pleadings here that both parties understood that there was a sale, and that there were some representations made in relation to that for which the defendant should get some reduction, or something of that kind, and give defendant the machine. Now, that isn't your idea at all?

"*Defendant's Counsel:* I don't know whether I get

your idea right or not—that if the plaintiff prevails, that it gives the defendant the machine?

*"The Court:* Is that your idea?

*"Defendant's Counsel:* Yes; most assuredly. Then the contract would be validated; but if the defendant prevails the plaintiff owns the machine, and that is all there is to it. In other words, if the defendant prevails, it does so upon the theory that this contract was never a valid, binding contract, because it was obtained by misrepresentation and fraud   *   *   *   that is my position exactly.

*"Plaintiff's Counsel:* If your Honor please, our contention in that regard is this: That by no possibility could the defendant claim and recoup any damages here. They haven't claimed any. They have alleged that there was a sale, and that that sale was brought about by fraud, and the fraud vitiates everything, and they prove the fraud, and that nullified the contract, and therefore the machine is ours, and they want a verdict of no cause of action. That is the theory on which they have drawn their pleadings. Now, we shall claim, if your Honor please, that if the defendant desires to attack the validity of this sale on the ground of fraudulent representations, at least after this suit was commenced if they didn't wish to retain the machine and pay for it, they should have moved it out or set it aside and not used it. Why, if we just wait long enough before bringing our suit they would wear out the machine! We could sue for the purchase price and get nothing, and they would have all the benefit of the machine. I maintain that by their use of the machine and their constant operation from the time of the commencement of the suit down to the present time, they have absolutely estopped themselves from attacking the validity of this contract, as a proposition of law. There is only one verdict, and that is a verdict for the plaintiff.

*"Defendant's Counsel:* Barring the last proposition that counsel made, I don't think that we are apart on our theory of what the result will be in case of a finding of the facts one way or the other. There doesn't seem to be much question about that.   *   *   *

*"The Court:* If a man claims that there is a sale —no sale—that there was fraud and misrepresenta-

tions and things of that kind practiced upon him by which he took the machine on trial and left it in his place of business, and he became satisfied that there were false, fraudulent representations, and that the sale didn't go, can he go on and continue to use that machine just as if it was his own, or must he immediately upon finding out that the machine don't work turn it back?

"*Defendant's Counsel:* Well, now, I would rather take up that and dispose of it. It is a legal proposition by itself, and my position is this: That the situation was such up to the time of the bringing of the suit— and after the bringing of the suit we can't inquire at all, but the whole die is cast the day the suit is brought. Whatever the condition then is, is what we have got to deal with now, unless there is some plea of *puis darrein continuance,* or something of that sort. Now, my contention is that during all this time—and it is not so great a time as it seems. You will understand this order was given nearly the last of July, 1912, and the machine was put in there possibly six weeks later, which would carry it into September, and then this difficulty ran all winter until the spring of 1913. That wasn't a very long period of time and when Mr. Walker got home he found that there was difficulty about it, and they have been trying to solve that ever since, as the correspondence shows, and these defendants have been trying to let the plaintiff make good with his machine all that time, and finally he turns around and sues. Now, up to that date we have to do with it. Just one further proposition in that connection and that is this: It is absolutely unreasonable to suggest that any time that we thought that this machine wasn't coming up to the recommendations that were made for it we should throw it out, because the expense of throwing that machine out, after we have put out one other machine and installed this in its place, would be great, and then say, when we don't know what this jury will say, whether we have got to pay for it or not, throw it outdoors and then have the jury say, maybe, we have got to pay for it, and carry it back again and install it again.

"*The Court:* You can't blow hot and cold. You have got to blow one way or the other.

"*Defendant's Counsel:*  We are not trying to blow hot and cold.

"*The Court:*  You have got to either blow that there was a sale or there wasn't.  It is up to you to say what this jury should say before they have anything to say about it.

"*Defendant's Counsel:*  I understand it is up to me to elect first whether there was a sale or not.  We had a right to use that machine up to the time they brought suit, because it was in negotiation and on trial, and they were trying to make good, doing this and that, and everything, making tests, and the time wasn't very long either, as I said before, but we are willing to take care of that when we get to it."

At the close of this colloquy, the president and treasurer of the defendant company was further cross-examined, and the following occurred:

"*Q.* Mr. Walker, I want to ask you one question again.  Having reached the conclusion that this sale was brought about through fraud on the part of Mr. Linderman, why didn't you send that machine back, load it on a car, and have it switched down there?

"*A.* Because we knew we had gotten our foot in it on signing that order without any conditions, without the real conditions that existed, and we thought if we sent it down there, we might have to take it back. That is to be honest.

"*Q.* You didn't know just where you did stand on this contract?

"*A.* We didn't know where we did stand.  That is the reason why we are up here to a jury."

On the redirect examination of Mr. Walker by defendant's counsel the following occurred:

"*Q.* Was there some other reasons of trying to make it work or giving time to do the work it was represented it would do?

"*A.* Well, Mr. Linderman's statement was that, 'If this machine don't do exactly as I represented it, I will take it out,' not we send it back.

"*Q.* Was there any effort on his part to correct the difficulties from time to time, and whether that has—

"*A.* He has been doing that ever since we purchased

the machine, trying to correct the difficulties and trying to put on attachments that would make it work."

There is no claim on the part of the defendant that after the writing of the letter of July 25th by defendant, the plaintiff attempted to do anything more by way of experimenting with the machine. The court, as we have already said, directed a verdict for the plaintiff for the full amount of the contract price, and it would seem that by its charge it relied upon the case of *Foster* v. *Rowley*, 110 Mich. 63 (67 N. W. 1077).

The defendant has brought the case here upon writ of error, and the errors assigned are that the court erred in directing a verdict in favor of the plaintiff and in refusing to submit said cause to the jury. Defendant's position here upon the argument was substantially as above indicated in the court below, relying upon *Phelps* v. *Whitaker*, 37 Mich. 72.

Passing the claim of appellee, that as no exception was taken to the ruling of the court in response to plaintiff's motion to direct a verdict in its behalf, no question is here for review, but treating error as having been properly assigned upon the charge of the court, under our statute (section 10247, 3 Comp. Laws; 5 How. Stat. [2d Ed.] § 12960), we think that upon the merits of the case the court did not err in directing a verdict and judgment for the plaintiff, and that the case of *Foster* v. *Rowley, supra,* and the subsequent cases of *Hakes* v. *Thayer,* 165 Mich. 476 (131 N. W. 174), and *Wittemann Co.* v. *Malting & Brewing Co.,* 183 Mich. 227 (150 N. W. 109), rule the instant case.

The *Wittemann Co. Case,* like this, was planted in the pleadings, and was tried upon the theory that the contract in question was obtained by fraud, and it was under that theory that the case was submitted. Justice KUHN, speaking for the court, said:

"It is urged that what the defendant is attempting to do, in effect, is to add to the contract entered into by the parties warranties not contained therein, and it is insisted that the rule that there cannot be read into a written contract an express oral warranty should not be evaded by calling facts which constitute an express oral warranty by another name, 'fraud.' In support of appellant's claim the case of *Detroit Shipbuilding Co.* v. *Comstock,* 144 Mich. 516 [108 N. W. 286], is relied upon. We are unable to distinguish the instant case from that case, in principle, as it is clear that the representations here relied upon to show fraud * * * are warranties. As was said in the *Comstock Case* with reference to such representations: 'At most, this amounted to evidence of a parol warranty.' Under this authority we see no escape from the conclusion that the trial court should have ruled out all the evidence with relation to such representations."

The case of *Williams Transportation Line* v. *Transportation Co.,* 129 Mich. 209 (88 N. W. 473, 56 L. R. A. 939), is an instructive case upon the subject of the right to rescind an executed contract for a breach of warranty. In the instant case the claimed representation would amount to a verbal warranty, and not a false representation. As a verbal warranty it was inadmissible.

As this court said in *Hakes* v. *Thayer, supra,* this defendant could not "play fast and loose" in this matter. Having kept the machine and continued to use it down to the time of trial, it was estopped from claiming rescission of the contract as a defense.

It was competent for the plaintiff to show the conduct of the defendant with reference to the use of the machine, even down to the day of trial. No plea of *puis darrein continuance* was required. In fact, none would have been proper. Of course the defendant would interpose no such plea, and we know of no rule of pleading that would require the plaintiff to give notice that it would introduce evidence in rebuttal, or

on cross-examination of the defendant's witnesses to show that the defendant's conduct was such as to preclude the defense here sought. In fact it was along the line of plaintiff's claim in its declaration of goods sold and delivered, and to rebut defendant's defense of rescission.

We find no reversible error in the record, and the judgment of the court below is affirmed.

BROOKE, C. J., and McALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.