YOUNGS *v.* ADVANCE-RUMELY THRESHER CO.

1. SALES—FRAUD—WARRANTY—GOOD FAITH.
     Representation by defendant's agents that a grain separator sold by them to plaintiff would properly do the work for which it was purchased was no more than a warranty, and in the absence of evidence that it was not made in good faith did not amount to fraud, although the machine proved to be defective.

2. FRAUD—PRESUMPTIONS.
     Fraud is not to be presumed, but must be proven.

3. WARRANTY—EXPRESS WARRANTY—IMPLIED WARRANTY.
     An express warranty excludes any claim of an implied warranty.

4. SALES—WRITTEN CONTRACTS—PRESUMPTIONS.
     When a contract is reduced to writing all parol agreements or understandings of the parties are conclusively presumed to be expressed therein.

5. SAME—WARRANTY—WRITTEN CONTRACT CONTROLLING.
     The warranty in a written contract containing a pro-

vision that the writing contained all the representations, conditions, and warranties agreed upon between the parties is controlling as to the nature and extent of the warranty.

6. APPEAL AND ERROR—PLEADING—FRAUD — WARRANTY — AMEND-MENTS.

In order to avoid a retrial, the Supreme Court, on appeal, will treat a bill based on fraud as amended and the bill predicated on the written warranty, in the absence of proof of fraud.

7. SALES—BREACH OF WARRANTY—RESCISSION.

A written contract containing a warranty and a specific provision for rescission in case the grain separator sold proved defective and the seller failed to remedy the defect after notice entitled the buyer to rescind if there was in fact a breach of the terms of the written warranty.

8. SAME—EVIDENCE—SUFFICIENCY.

Evidence that a grain separator would not work satisfactorily, *held*, sufficient to entitle the buyer to rescind the contract of sale for breach of written warranty.

9. SAME—DAMAGES.

The suit being based on a breach of the written warranty in the contract of purchase of the present machine, the court below erroneously allowed recovery of $350 paid by plaintiff in settlement for the use of a machine sold the previous year which also proved defective.

10. SAME—LOSS OF BUSINESS—DAMAGES—RULE.

In the absence of such specific proof as may be offered before the circuit court commissioner as to plaintiff's damages for loss of business due to breach of warranty in the sale to him of a grain separator, the Supreme Court, on appeal, will not lay down any rule in respect thereto.

Appeal from Washtenaw; Sample (George W.), J. Submitted June 16, 1921.    (Docket No. 23.)    Decided October 3, 1921.

Bill by Bert Youngs against the Advance-Rumely Thresher Company for the cancellation of a contract,

and for damages.   From a decree for plaintiff, defendant appeals.   Modified and affirmed.

*Lee N. Brown* and *Cavanaugh & Burke* (*Henry C. Bogle*, of counsel), for plaintiff.

*Arthur Brown* (*E. R. Sunderland*, of counsel), for defendant.

SHARPE, J.   In 1916 plaintiff purchased a threshing machine engine from the defendant.   Later, in the same year, he purchased a grain separator, giving therefor his five promissory notes, aggregating $989, secured by a chattel mortgage on the engine and separator.   This separator did not do good work.   Defendant made several ineffectual efforts to make it do so.   The machine was finally returned to the defendant and a new one furnished plaintiff.   The negotiations to this end were consummated on August 29, 1917, by plaintiff's executing a written order for the new machine, which was accepted in writing by the defendant.   It provided for a return of the machine purchased in 1916, the payment of $6.60 in cash and the giving of three promissory notes, one for $50, due December 1, 1918, one for $125, due December 1, 1917, and one for $125, due December 1, 1918. The payment of these notes and those unpaid on the former machine, amounting in all to $959, was secured by a chattel mortgage of same date on the engine and the new separator.   There was attached to the mortgage the affidavit of plaintiff required by the statute.   The contract thus made contained the following warranty:

"Said machinery is warranted to be well made and of good material, and with proper use capable of doing as good work as any other machine of the same kind, size and rated capacity, working under like conditions, but any machine or part thereof not manufactured for or by vendor, or which is second-

hand, rebuilt or repaired, is not warranted, by statute or otherwise."

It also provided:

"There are no representations, warranties or condition express or implied, statutory or otherwise, except those herein contained and no agreement collateral hereto shall be binding upon either party unless in writing hereupon or attached hereto, signed by purchaser and accepted by vendor at its head office."

At the same time plaintiff executed and delivered to the defendant the following writing:

"SATISFACTION CERTIFICATE.
"Dated at Ypsilanti, Mich., Aug. 29, 1917.
"Received of Advance-Rumely Thresher Company, Inc., a corporation of LaPorte, Ind., an exchange of separators per terms of order bearing even date herewith, in consideration of which I hereby acknowledge full satisfaction and settlement of all demands of any nature whatsoever against Advance-Rumely Thresher Company, Inc., or growing out of the purchase and sale or relating to certain machinery heretofore purchased from Advance-Rumely Thresher Co. (describing it), and expressly waive all counter claims, set-offs and defenses against the collection of any note or notes given therefor or indebtedness relating thereto and any renewal or renewals thereof, and I hereby acknowledge to owe Advance-Rumely Thresher Company, Ltd., aforesaid for the purchase price of said machinery the sum of $659.00 which sum I promise to pay with interest.
(Signed) "BERT YOUNGS.
"Witness:
"E. D. LANIGAN."

This machine was received in due time by plaintiff. He claims it did no better work than the former one. Several efforts were made by the defendant's employees to make it work properly but, as plaintiff claims, without effect. Much correspondence passed between the parties. On September 18, 1917, plain-

tiff advised defendant by telegram that he had "ordered car will load separator soon as car is ready," to which the defendant replied on the following day:

"If you load separator you will do so at your own risk as we refuse to accept it. Wilcox will be there this afternoon."

On October 1st, plaintiff wrote that the changes made by Wilcox "failed to make this separator clean and save grain." Defendant's manager replied on October 3d, saying Wilcox would be at plaintiff's place again on the next day and he had "entire confidence that he will be able to please you and that you will pronounce the machine A-1 before he leaves you." On October 30, 1917, plaintiff advised defendant that the machine would not work, "is of no use to me," and asked for directions what to do with it. The defendant answered on November 3d, saying that when last seen running by their expert, Mr. Wilcox, it was doing good work and assuring plaintiff that the machine was all right. The machine remained with plaintiff.

On January 17, 1918, plaintiff filed the bill of complaint herein. As amended, it sets forth the dealings between the parties as above stated. In paragraph 11 it alleges:

"That owing to the complete failure of the said separator and its equipment to perform its work properly or at all, and the failure of the said defendant, its experts and agents after due and proper notice, to remedy the defects of the same, the threshing season of the summer of 1916 was a great loss and damage of many thousand dollars to this plaintiff and loss to him in the confidence and patronage of the many customers for whom he had attempted to thresh with said separator and its equipment and this defendant (meaning plaintiff) through and by means of said failure largely lost his threshing patronage in said community."

After stating the ineffectual efforts of defendant to make the machine work in a proper manner, it alleges the refusal of defendant to exchange the same for a new machine unless plaintiff would pay in cash a note given on the original purchase, amounting with interest to about $350.   It further alleges that, owing to the "embarrassing and hopeless condition" in which plaintiff was placed and the danger of losing the business he had theretofore carried on successfully, he was—

"obliged to yield and did yield to the promise of this defendant to purchase from it a new separator for the sum of $1,350 upon the express condition and representation   *   *   *   that the said new separator was absolutely perfect   *   *   *   that it had been tried out for three years; that he would guarantee it in every detail;"

that after many trials, it being found that the machine would not work properly, he offered to ship it back to defendant but was notified that defendant would not accept it.   Plaintiff further alleges—

"that he was induced to sign and did sign said satisfaction certificate by the representation to plaintiff on the part of defendant that the said separator and its equipment   *   *   *   would perform satisfactorily and in a good and workmanlike manner, the purposes for which the same was purchased   *   *   *   that said defendant knew that said plaintiff relied upon said representation,   *   *   *   that defendant made the representations knowing or under circumstances by virtue of which it ought to have known that said representations were false and that   *   *   *   the inducement as aforesaid by said defendant of this plaintiff to sign said satisfaction certificate constituted a fraud upon this defendant (meaning plaintiff), and as such and because of the same should in a court of equity, be set aside and held for naught."

The relief prayed for was a cancellation of the satisfaction certificate and the notes and mortgage

and an accounting of the sums paid by plaintiff on both machines and the losses sustained by him resulting from the failure of the machines to do good work, and that a money decree be granted plaintiff therefor.

Defendant's answer is a denial of all representations except those contained in the written warranties under which the machines were sold. It alleges that these written "warranties fixed exactly the obligations which defendant assumed in regard to said machines" and "that defendant has in every respect fully performed all of said warranties." By way of cross-bill, it sets up the facts incident to the giving of the chattel mortgage of August 29, 1917, alleges that the notes secured thereby are past due, and prays for foreclosure thereof.

The trial court found that "each and all of the allegations" of the bill of complaint "is and are true and fully sustained" and that plaintiff was entitled to the relief prayed for. The decree canceled the satisfaction certificate, and all the notes unpaid, set aside the chattel mortgage, dismissed the cross-bill, ordered defendant to pay the $350 note paid to it by plaintiff when the new machine was purchased, and referred the matter of plaintiff's damages for loss of business during the seasons of 1916 and 1917 to a circuit court commissioner for computation. From this decree the defendant has appealed.

1. Was fraud alleged or proven? This is the first question discussed by counsel. We have set forth substantially all the allegations in the bill relating to the false representations on which plaintiff relies. These can well be stated by saying that defendant represented that the machine to be furnished and afterwards delivered would properly do the work for which it was purchased. This was no more than a warranty, and the record is barren of proof tending

to show that if such representations were made by defendant they were not made in good faith. It appears from the record that the defendant is the second largest manufacturer of threshing machinery in this country. There is no proof that its officers and salesmen did not believe the machines furnished would work properly, but we think the claim made by the plaintiff that he was induced to give the order for the second machine and sign the satisfaction certificate by reason of the fraudulent representations of the defendant is entirely unsupported by the proofs. Fraud is not to be presumed, but must be proven. The record contains no proof even tending to show that any representations or warranties made by the defendant were not made in the utmost good faith. '

2. Must the written warranty control? At the time plaintiff gave the order for the separator on August 29, 1917, he knew the trouble he had had with the machine purchased in 1916. He was a thresher of 35 years' experience. If he desired a more specific warranty than that embodied in the order given by him and accepted by the defendant, he should have had it inserted therein. He makes no claim that he did not fully understand the written warranty or the provision that the writing contained all the representations, conditions and warranties agreed upon between them. This court has many times held that an express warranty excludes any claim of an implied warranty and that when the contract is reduced to writing all parol agreements or understandings of the parties are conclusively presumed to be expressed therein. *Hall* v. *Duplex-Power Car Co.*, 168 Mich. 634; *Potter* v. *Shields*, 174 Mich. 121; *Linderman Machine Co.* v. *Shaw-Walker Co.*, 187 Mich. 28; *John D. Gruber Co.* v. *Smith*, 195 Mich. 336; *American Varnish Co.* v. *Globe Furniture Co.*, 199 Mich. 316.

The rule is thus stated in *Bates Tractor Co.* v. *Gregory*, 199 Mich. 8:

"Where the parties to a contract reduce it to writing and agree as to what warranties said written contract shall contain, other warranties growing out of antecedent representations may not be imposed upon the vendor. * * * Representations in the nature of warranties antecedent to the contract cannot be urged as fraud in cases where the contract is in writing, and contains specific warranties."

3. The written warranty. In plaintiff's brief counsel say:

"We wish to emphasize here that without going back of the express warranty contained in the order for machinery, plaintiff is entitled to relief."

Defendant's counsel in reply to this claim, after quoting the warranty, say:

"There is not a word in the bill of complaint about any such warranty or representation as this which the written contract contained."

We may, however, and think we should in order to avoid a re-trial, as the facts were fully gone into, treat the bill as amended and the claim of plaintiff as predicated on the written warranty. *Peacock* v. *Railway Co.*, 208 Mich. 403; *Thomas Canning Co.* v. *Railway Co.*, 211 Mich. 326. Anticipating such action, counsel for the defendant urge that the breach of warranty would not authorize a rescission by plaintiff. They rely on *Williams Transportation Line* v. *Transportation Co.*, 129 Mich. 209 (56 L. R. A. 939); *Linderman Machine Co.* v. *Shaw-Walker Co.*, 187 Mich. 28, and *Rimmele* v. *Huebner*, 190 Mich. 247, to sustain this claim. The rule stated in the *Transportation Case* and approved in the others does not apply when the contract itself authorizes a rescission. In *Kimball & Austin Manfg. Co.* v. *Vroman*, 35 Mich.

310 (24 Am. Rep. 558), quoted from in that case, it was said:

"While a right to return property which does not answer the assurance is not always or generally expressed or implied in the warranty, yet, if agreed upon, it is in no way inconsistent with a warranty."

Plaintiff contends that section 11900, 3 Comp. Laws 1915 (section 69 of the uniform sales act), expressly provides for rescission in such cases. It is sufficient, however, to say that this contract contains a specific provision for rescission. After reciting the things which the vendee must do in case of defects in the machine or in the work which it does, it provides:

"If vendor fails to remedy the defect purchaser shall have the right immediately to return the defective goods or parts in as good condition as when received by him,    *    *    *    and shall thereupon give vendor immediate notice of such return."

The fact that plaintiff gave notice of an intention to return and defendant advised him that it would not accept a return is not in dispute. If then there was in fact a breach in the terms of the warranty, the plaintiff was entitled to· rescind. The warranty is quoted above. Defendant insists that there is no proof that the machine would not do—

"as good work as any other machine of the same kind, size and rated capacity, working under like conditions."

This must, of course, be read, having in mind the kind of machine and the purpose for which it was to be used. It was intended for use in threshing the grain grown by farmers on their farms. There is an abundance of proof that it did not do such work satisfactorily. Several of its parts were taken away by defendant's expert and replaced by others. One

of the troubles was with the tailings elevator. It permitted the separated grain to pass over in the chaff and straw. E. D. Lanigan, the Michigan manager of the defendant, who resided at Battle Creek, who sent the experts to repair the defects complained of, in a letter to the plaintiff under date of September 10, 1917, after stating the report made to him by his expert, Mr. Wilcox, and advising him that they were sending him some new parts, said:

"The writer, you will remember, informed you that we had had some difficulty with the tailings elevator which we felt that we had overcome by some changes we had made in it. We find that with these changes the elevator on the machines we have out running do very well but we have since found that in wet grain that they were still causing some trouble and had already arranged to make this new bottom head for the elevator before the receipt of your letter, or in fact, before Mr. Wilcox got back. However, it takes some little time to get out new drawings and patterns, but as above stated, we have the job so nearly completed that we are satisfied we can take care of you the latter part of this week.

"As soon as the parts are ready we will send them down and send Mr. Wilcox back to install them and see that you get good results with the separator.

"We want to assure you that we will positively see to it that this elevator is made to work properly without clogging up under ordinary conditions and when we have taken care of these matters as outlined above, we are confident you will be mighty well pleased with the machine."

As a witness he testified:

"Q. In your letter to Mr. Youngs with regard to the second machine you pointed out to Mr. Youngs certain things that were defective on the machine, that he had no means of knowing at the time he purchased it, didn't you?

"A. Yes.

"Q. This machine as a matter of fact was largely

an experiment with regard to that particular feature of it?

"*A.* In regard to that particular feature.   *   *   *

"*Q.* And if these defects in the tailings elevator existed at the time as you now admit they existed, they must necessarily have had a serious effect on the satisfaction which he was able to give to his patrons in the threshing business?   *   *   *

"*A.* They were if not taken care of.   *   *   *

"*Q.* May I frame a question to you as to whether or not this particular method of operation on this machine was an experiment?   Was it or was it not?

"*A.* I would say it was an experiment to a certain extent.   *   *   *

"*Q.* Aside from these complaints made by Mr. Youngs, who else complained?

"*A.* There was a number of complaints received in regard to the tailings elevator, I would not be able to say how many, I have knowledge of three or four myself.   *   *   *   There was not sufficient opening to permit the tailings particularly in damp grain to get into the elevator in proper shape and a change was made in the sprocket and bearing and that was incorporated into machine that was shipped to Mr. Youngs.   Finding that did not overcome the difficulty, a new head was designed and put in here."

The report made on September 11th by Mr. Wilcox, who had attempted to repair the machine, reads in part as follows:

"They started up and I remained with the machine the balance of day, had a lot of trouble with tailings elevator, the chain breaking four times.   Found there was nothing I could do to remedy the trouble until I returned to factory and got the parts ready."

It is apparent from this evidence, as well as from the testimony of the several farmers who were sworn, all of whom had had some experience with threshers, that the machine was not doing good work.   We think the trial court was justified in its finding that plaintiff had a right to rescind under the terms of the contract.   The defendant is entitled to a return

of the machine and the plaintiff to a cancellation of his notes and the chattel mortgage.

4. Plaintiff's damages. The views we have expressed preclude the consideration of any damage sustained by plaintiff prior to the purchase of the new machine. Any consideration paid by him therefor, as expressed in the contract of sale, should be returned and, as before stated, his mortgage and notes should be delivered up and canceled. The $350 payment was not paid as a part of the purchase price, but agreed to on the settlement as compensation for the use of the machine purchased in 1916.

We think the provision in the decree respecting other damages too broad. These must be confined to such as are allowable in cases of like nature. We are loath to lay down any rule respecting them in the absence of such specific proof as may be offered before the commissioner and content ourselves with calling attention to the language employed in *Truman* v. *Threshing Machine Co.*, 169 Mich. 153, and the cases there cited, where the subject of damages in somewhat similar cases is considered.

The decree will be modified in accordance herewith, and, as thus modified, affirmed, without costs of this court to either party.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.